WILLIAM HAYES, APPELLANT, *v.* SOUTHERN PACIFIC CO., RESPONDENT.

1. *Railroad Buildings—Construction of—Expert Opinion of Admissibility of.*

Where buildings used exclusively in the business of railroading are peculiar and more or less complicated structures, and their construction requires skill in the mechanic arts, and is outside the knowledge and experience of ordinary jurors, the opinion of an expert witness on the question whether or not such buildings were carefully and properly constructed is admissible.

2. *Personal Injury—Action For—Experiment—Evidence Of—Admissibility.*

H., an employé of a railroad company, while walking on the company's track located along the center of a passageway between its coal bins, was struck by an engine while standing on the side of the track against the bins, whither he had gone to

permit the engine to pass. The passageway was shown to be 12 feet 2 inches wide. The beam of the engine which struck H. was 9 feet 1 inch wide. Afterwards the company placed F., as near as possible, in the same position as H. was when he was struck and injured, and ran another engine with the same length of beam as the one which struck H. past him, to determine by experiment that a man could stand there in safety while such engine passed him. Both engines were run at a low rate of speed. The railroad track and bins were in the same position at the time of the accident and of the experiment. In an action brought by H. against the company to recover damages for injuries sustained by him, both H. and F. testified before the jury, and could be observed by them. *Held*, that the court committed no reversible error by permitting the company to introduce evidence of the experiment.

(No. 931.   Decided June 20, 1898.)

Appeal from district court, Weber county; H. H. Rolapp, *Judge.*

Action by William Hayes against the Southern Pacific Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*J. H. & H. R. Macmillan,* for appellant:

Introduction of the evidence of the experiment was inadmissible. *Cam.* v. *Piper*, 120 Mass. 188; *Eidt* v. *Cutter*, 127 Mass. 523; *State* v. *Justus* (Or.) 8 Pac. Rep. 337; *Ry.* v. *Mugg*, 31 N. E. 565-6; *Ry.* v. *Champion*, 32 N. E. 875; *Libby* v. *Scherman*, 34 N. E. 803; *Moore* v. *Ry.*, 61 N. W. 992.

Of course the jury in this case was not taken to Carlin to see the experiment performed, but we say that an experiment performed before the court, jury, and respective parties is more apt to bring about a fair result than one performed by one of the parties with no one else present.

and then testified to before the jury by those performing it.

See also as bearing upon this question the following: *U. S.* v. *Ried,* 42 Fed. 134; *Kinney* v. *Folkers,* 84 Mich. 620; *Clark* v. *Willett,* 35 Cal. 535; *C. P. R. R.* v. *Pearson,* 35 Cal. 247; *Medsker* v. *Pague,* 27 N. E. 432; *D. & R. G.* v. *Glasscott,* 4 Colo. 270; *Klanowski* v. *G. T. Ry. Co.* (Mich.) 31 N. W. 275; *Alabama, etc., Ry. Co.* v. *Burgess,* 22 So. 169-171.

*Marshall, Royle & Hempstead,* for respondent.

BARTCH, J.:

The plaintiff was on the 18th day of November, 1894, in the employ of the defendant company at Carlin, Nev., as a coal heaver. His work had to be performed in the company's coal sheds, and consisted in supplying the tenders of engines with coal whenever they were run into the sheds for that purpose. The coal sheds were constructed with a railroad track through them, so as to enable the running of engines into them for coaling purposes. It appears that coal bins were on both sides of the track, and that the passageway or space for the track, according to plaintiff's testimony, was 12 feet 2 inches wide. On the day above mentioned the plaintiff attempted to pass through this passageway, on the track to the roundhouse, for a purpose of his own, and was struck by the beam of an engine in the sheds while standing on the side of the track, against a coal bin, where he had gone, on the approach of the engine, as a place of safety, and received the injuries of which he complains. The witness Fitzgerald testified that the beam on the engine which struck the plaintiff, by measurement, was 9 feet and 1 inch in length. There is also evidence tending to show that it was a prac-

tice for employees, with the knowledge of the company, to pass through the sheds on the track.  The plaintiff, claiming that he was injured through the negligence of the defendant in the construction of its coal sheds, brought this action to recover damages.  At the trial the jury returned a verdict of "no cause of action."  Hence this appeal.

The first assignment of error which we will consider relates to the admission of evidence.  The court permitted the witness Fitzgerald, over the objection of counsel for the plaintiff, to answer the following question: "From your experience as a railroad engineer and your experience as a civil engineer, please state whether those sheds were carefully and properly built for the purposes for which they were erected?"  Counsel for the appellant insist that this action of the court was erroneous, because, as they maintain, it was calling for the opinion of the witness on a question that the jury was to determine.  No objection appears to have been interposed on the ground that the witness was not an expert, and therefore it may be assumed that he was competent to give expert testimony.  The general rule is that a witness must testify to facts, and not conclusions.  To this rule, however, there are exceptions, and we think this question falls within the exceptions.  The contention of the appellant at the trial was that the coal sheds were negligently constructed. This was controverted by the respondent, and thus one of the main issues was whether they were properly erected for the purpose for which they were intended.  Now, it is apparent from the evidence that sheds are peculiar and more or less complicated structures,—results of mechanical skill,—and appear to be necessary for, and used exclusively in, the business of railroading.  Thus, the very nature and use of the structure precludes the idea that the average layman is competent to judge of their

proper or improper construction. It was therefore permissible to resort to the opinion of a person possessed of such requisite mechanical skill and experience as enabled him to form a correct judgment as to whether or not the sheds were carefully and properly constructed. The building of such sheds for the purpose of railroading is not a subject of general knowledge, but it depends so far upon skill in and knowledge of the mechanic arts, outside the knowledge and experience of ordinary jurors, as to render the opinions of those who are competent, from special training in the art of construction, and experience, to form them, admissible. This is so because of the difficulty in placing before jurors unskilled in such matters a state of facts which would enable them to draw correct conclusions without the aid of such opinions. And such opinions are not in all cases confined to experts. "There is a growing tendency to the doctrine, if it be not already established, that opinions of ordinary witnesses may be given upon matters of which they have personal knowledge in all cases in which, from the very nature of the subject, the facts, disconnected from such opinions, cannot be presented to a jury as to enable them to pass upon the question with the requisite knowledge." Suth. Dam. § 442; Rog. Exp. Test, § 108; 1 Greenl. Ev. § 440; 7 Am. & Eng. Enc. Law, 599, 510; *Mangum* v. *Mining Co.,* 15 Utah, 534; *Wright* v. *Pacific Co.,* 15 Utah, 421; *Scattergood* v. *Wood,* 79 N. Y. 263; *Walker* v. *Fields,* 28 Ga. 237; *Railroad Co.* v. *Johnson,* 38 Ga. 409; *Railroad Co.* v. *Lanham,* 27 Ind 171. We conclude that the court committed no error in permitting an answer to the question.

Counsel for the appellant further insist that the court erred in permitting the witness Fitzgerald to answer the following question, over their objection: "Mr. Fitzgerald, will you please state whether you yourself have ever stood

inside of that shed, at or near the place where the accident was testified to have occurred, while an engine with those beams entered and passed you?" This question was objected to on the ground that the experiment was not shown to have been made at the same place, and with the same engine, and because made with a different man, and not shown to have been made at the same rate of speed. As to the location, the evidence shows that the place of the accident was pointed out to the party, who stood in the passageway to make the experiment, and that he stood, as near as was possible to ascertain, in the same place where the plaintiff stood at the time of the injury; and there is no question that the passageway, railroad track, and sheds were still the same, and had not been changed. While it appears a different engine was used in the experiment, still it is shown that the beam which struck the plaintiff was of the same length as those on the engine used. So the men were different, it is true, but both were witnesses, and testified before the jury, who, having had an opportunity for observation and comparison, had no occasion to be misled to the plaintiff's prejudice. There was a difference in the rate of speed, but both engines were running at a low rate,—the one which caused the injury, according to the plaintiff's testimony, at seven or eight miles per hour, while the other was running at a lower rate on the occasion of the experiment. From all the facts in evidence, it seems difficult to see how the difference in the rate of speed could make any material difference in the space between the engine and the side of the coal bin where each man was standing when the engine passed. However this may be, the experiment was performed simply for the purpose of ascertaining whether a man could stand there in safety while the same kind of an engine which caused the injury was passing, or, in other words,

for the purpose of measuring the space between the engine and the side of the bin. This appears from other evidence as well; for the plaintiff testified that the passageway was 12 feet 2 inches wide, and the witness Fitzgerald that the beam which struck the plaintiff was 9 feet and 1 inch long. It will be noticed that this left a space of $18\frac{1}{2}$ inches between each end of the beam and the side of the coal bin, the bins being situated on each side of the passageway, and the circumstances in evidence indicating that the track was laid along in the center of the passageway. It would seem, therefore, by simple mathematical demonstration, without the aid of the experiment, that there was sufficient space, where the appellant was injured, to permit a man of even more than average size to stand, while an engine was passing, without being necessarily exposed to injury. This even though the engine surged 3 or 4 inches while passing, as testified by the plaintiff, which, however, seems improbable, at a rate of speed at which an engine must necessarily run at that point in order to stop within the coal shed. Under all the facts and circumstances of this case appearing in the record, we are of the opinion that the court committed no reversible error in permitting the question here under consideration to be answered, although it behooves a court to exercise great caution in the admission of such testimony.

The appellant also insists that the court erred in allowing a certain witness to answer questions respecting the population of the town of Carlin, where the accident occurred; the purposes for which the coal sheds were erected; the purpose for which they were used by the defendant company; and whether the coal sheds were erected to be used as a common passageway for people, and for the convenience of the public. It seems clear, from an examination of the pleadings and evidence, that none of these ques-

tions, nor any of the answers thereto, could prejudice the rights of the appellant; and therefore, whether subject to the objections interposed or not, they cannot constitute reversible error. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.