(December 15, 1911.)

## EZRA KNAUF, Respondent, v. DOVER LUMBER COMPANY, a Corporation, Appellant.

### [120 Pac. 157.]

NONSUIT—WAIVER OF MOTION—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK—INSTRUCTIONS.

(Syllabus by the court.)

1. Where a motion is made for a nonsuit at the close of the evidence on the part of the plaintiff upon the ground that the evidence is insufficient to warrant the submission of the case to

the jury and the motion is denied and evidence is thereafter offered by the defendant, the ruling of the trial court upon the motion is not reviewable upon an appeal from the judgment or from the order overruling the motion for a new trial.

2. Where the owner of a sawmill is operating a slasher, and the chains which move the slats and slabs and lumber thrown upon such chains pass through holes in the floor and double back under the floor, and then come through the floor again, and such holes are constructed by the lumber company, and one of such holes has been constructed larger than was necessary for the chain to pass through, or had worn larger than was necessary, and larger than is used for such purpose, and because of the unusual and unnecessary size of such hole, such hole is dangerous and may be stepped into by a servant operating said slasher, and may be covered up and concealed by the slats and slabs and lumber thrown upon the chains so that it is not exposed, and a servant unacquainted with its construction may not observe or know of such hole or its size or the danger, and while discharging his duties as such servant steps into such hole and is thereby injured: *Held,* that the question of negligence of the lumber company in maintaining the slasher and hole in such condition is for the jury to determine.

3. Under the law it is the duty of the master to provide the servant with a reasonably safe place at which to work, and with reasonably safe machinery, tools and implements with which to work, and when the master has discharged such duty and the employment is accepted by the servant, then the servant assumes all the risks and hazards incident to or attendant upon the particular employment or the performance of such labor.

4. This duty being thus imposed upon the master, the question whether the master was negligent is for the jury to determine where there is a conflict in the evidence, and when the jury by their verdict determine that the master was negligent, such verdict will not be set aside for want of evidence to support the same.

5. Where contributory negligence is plead as a defense, it is not necessary for the plaintiff to prove the negative of contributory negligence as a part of the cause of action, and the defendant is required to prove by a preponderance of the evidence that the plaintiff was guilty of contributory negligence; and the plaintiff may also introduce evidence contradicting such proof of the defendant, and the jury determines from the preponderance of the evidence upon the particular question whether the plaintiff was in fact guilty of contributory negligence.

6. A servant in accepting employment assumes the ordinary risks incident to such employment, but the servant does not assume such risks as arise out of the negligence of the master unless such

risks are known to the servant or are of such character that by the exercise of ordinary care upon the part of the servant he could have known the same.

7. Opinions of ordinary witnesses may be given upon matters of which they have personal knowledge in all cases in which from the very nature of the subject the facts disconnected from such opinions cannot be so presented to a jury as to enable them to pass upon the question with the requisite knowledge; and where opinions are asked of expert witnesses on a matter of common knowledge, and such opinions are given, and it does not appear that the parties against whom such evidence was given will be injured, it is not reversible error.

8. Instructions in this case examined, and when taken together and as an entire statement of the law governing the particular facts of the case, they show that the court was not in error, although some of the instructions do not state the law as fully as might have been given on the particular subject attempted to be embraced in each instruction.

APPEAL from the District Court of the Eighth Judicial District for Bonner County. Hon. R. N. Dunn, Judge.

An action to recover damages for personal injuries. Judgment for plaintiff. Defendant appeals. *Affirmed.*

G. H. Martin, and A. G. Avery, for Appellant.

The risk in connection with an injury such as was received in this case is one that is assumed by the employee, and the plaintiff cannot recover. (*McCafferty v. Lewandos French D. & C. Co.*, 194 Mass. 412, 120 Am. St. 562, 80 N. E. 460; *Hoard v. Blackstone Mfg. Co.*, 177 Mass. 69, 58 N. E. 180; *Nealand v. Lynn & B. R. Co.*, 173 Mass. 42, 53 N. E. 137; *Jones v. Manufacturing & Inv. Co.*, 92 Me. 565, 69 Am. St. 535, 43 Atl. 512; *Goure v. Storey*, 17 Ida. 352, 105 Pac. 794; *Drake v. Union Pac. Ry. Co.*, 2 Ida. 487 (453), 21 Pac. 560; *Pearson v. Boston Gas Light Co.*, 201 Mass. 176, 87 N. E. 571; *Atchison T. & S. F. Ry. Co. v. Stone*, 77 Kan. 642, 95 Pac. 1049.)

Walking backward on that floor with all of the knowledge he was bound to possess, and which he admits he possessed, is plainly negligence on the part of the plaintiff, and there can

be no recovery, independent of any other feature of the case. (*Day v. Cleveland etc. Ry. Co.*, 137 Ind. 206, 36 N. E. 854; *Olson v. McMurray*, 9 Wash. 500, 37 Pac. 679.)

The law does not require a defendant in a personal injury suit to submit the question of whether or not his machinery is dangerous to the judgment of witnesses, but to the jury. If that question is in issue, it was exactly what the jury was selected to decide. These witnesses might describe this machine and tell how it was constructed and operated, but their conclusions were absolutely incompetent. (*Bruce v. Beall*, 99 Tenn. 303, 41 S. W. 445; *Bergquist v. Chandler Iron Co.*, 49 Minn. 511, 52 N. W. 136; *Hunt v. Kile*, 98 Fed. 49, 38 C. C. A. 641; *Nary v. Railway Co.*, 55 Hun, 612, 9 N. Y. Supp. 153; *Gerbig v. Railway Co.*, 67 Hun, 649, 22 N. Y. Supp. 21; *Van Wycklen v. City of Brooklyn*, 118 N. Y. 424, 24 N. E. 179; *Seese v. Northern Pac. Ry. Co.*, 39 Fed. 487; *Southern Ry. Co. v. Mauzy*, 98 Va. 692, 37 S. E. 285; *I. & S. C. Co. v. Tolson*, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. ed. 270; *Stoll v. Daly*, 19 Utah, 271, 57 Pac. 299.)

H. H. Taylor, for Respondent.

The plaintiff did not by accepting the employment assume the risk which had been created by the negligence of the defendant. (*Maloney v. Winston Bros. Co.*, 18 Ida. 740, 111 Pac. 1080; *Craesafulli v. Winston Bros. Co.*, 18 Ida. 158, 108 Pac. 740; *Maw v. Coast Lumber Co.*, 19 Ida. 396, 114 Pac. 9; *Crawford v. Bonners Ferry Lbr. Co.*, 12 Ida. 678, 87 Pac. 998, 10 Ann. Cas. 1.)

The question of fact as to negligence was a proper subject for the consideration of the jury. (*Wheeler v. O. R. & N. Co.*, 16 Ida. 375, 102 Pac. 347.)

Plaintiff was under no duty to inspect this floor, to ascertain whether there were dangerous holes. (*Maloney v. Winston Bros. Co., supra; B. & O. R. Co. v. Baugh*, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. ed. 772.)

Even if plaintiff had known of the presence of these holes, it by no means follows that it was negligent for him to step

backward.  (*Carson v. City of Genesee,* 9 Ida. 244, 108 Am.
St. 127, 74 Pac. 862.)

Forgetfulness of a known danger is not necessarily negli-
gence.  (*Weed v. Village of Ballston Spa,* 76 N. Y. 330;
*Palmer v. Dearing,* 93 N. Y. 7.)

The vital and basic question whereby it was to be deter-
mined whether or not the defendant was negligent was, What
was the proper method of construction, as compared with the
method which defendant had used?  As an aid to the deter-
mination of that question, it was proper to present testimony
of men who knew what was the proper method of construction.

Even if the expert testimony had been unnecessary, it cer-
tainly did no harm.  (*Ryan v. Oakland Gas Light & Heat
Co.,* 10 Cal. App. 484, 102 Pac. 558.)

"On any subject not within the common knowledge and
experience of men of common education in the ordinary walks
of life, an expert witness may be asked whether or not sup-
posed acts would be proper or prudent under specified cir-
cumstances, though that is to be the very question for the jury
if they find the fact as supposed."  (Abbott, Trial Brief, p.
204, 276, and cases cited.)

As to the construction or operation of a machine not within
common knowledge, expert testimony is admissible such as was
introduced in this case.  (*Hayes v. So. Pac. Ry. Co.,* 17 Utah,
99, 53 Pac. 1001, and cases cited.)

It is not necessary that every possible opportunity for mis-
apprehension be anticipated and guarded against when word-
ing an instruction.  (*Parsons v. Lyman,* 71 Minn. 34, 73 N.
W. 634.)

"We cannot determine the correctness of an instruction
by segregating it from the entire charge and considering it
alone."  (*Houser v. Austin,* 2 Ida. 204, 10 Pac. 37.)  And
the instructions must all be taken together.  (*Harvey v.
Alturas Gold Min. Co.,* 3 Ida. 510, 31 Pac. 819.)

STEWART, C. J.—This is an action to recover damages
for personal injuries alleged to have been sustained by the
respondent at a sawmill owned by the appellant.  The cause

was tried and a verdict rendered in favor of the respondent for the sum of $1,950. This appeal is taken from the order overruling a motion for a new trial.

The first question presented on this appeal is the ruling of the trial court upon the appellant's motion for a nonsuit at the close of the plaintiff's evidence. After the motion for a nonsuit was overruled the appellant offered evidence to prove the allegations of his answer as well as in opposition to the allegations of the complaint. In the case of *Rippetoe v. Feely,* recently decided by this court, and reported *ante,* p. 619, 119 Pac. 465, it was held: "Where a motion is made for a nonsuit at the close of the evidence on the part of the plaintiff upon the ground that the evidence is insufficient to warrant the submission of the case to the jury, and the motion is denied, and evidence is thereafter offered by the defendant, the ruling of the trial court upon the motion is not reviewable upon appeal from the judgment or from the order overruling the motion for a new trial." That decision is decisive of this question.

The evidence shows that the plaintiff was employed by the defendant on Saturday, July 3, 1908, and went to work on the outside of the mill, and on Sunday, the 2d day of August, was told to go to work the following morning on the slasher inside. The plaintiff commenced work on the slasher as directed about 7 o'clock Monday morning, and was injured about 9 o'clock after working about two hours. He describes the slasher and the place where he was working and the accident as follows:

"The slasher is a pretty well known sort of contrivance commonly used in sawmills. Its purpose is to cut up the long slabs and lath stock into four-foot lengths for lath. It takes four-foot lengths for laths. I think most slabs are four-foot slabs. That is the usual length of those I have seen. The mill at Tower, Minnesota, was a one-band mill. The last work I did was off-bearing from the band-saw, tail-saw; off-bearing—tail-saw. I worked in the slasher something over a day or two. I saw it work while I was working in that mill. I was not working near it. I saw it at a distance of about

thirty or forty feet every day. I very seldom went nearer to it than that. While I was tail-sawing I would pass by it once in a while. Probably twice during the day. There might have been days when I went by there three times. I might have been through there more than twice, but on an average of two or three times a day, I judge. I don't remember how many saws were in that slasher, nor how many chains there were on it. There were chains all the way across on that incline the same as here. There was not any flat surface at all; it was all incline. The next season I worked at the sawmill I worked on the boom. That was about seven years ago. It was about the year 1904 that I worked at the first sawmill. That was at Tower, Minnesota. . . . . I began work July 31st at 3 o'clock in the afternoon. That was Friday. I worked all that day feeding logs on this endless chain. No one told me how to feed the endless chain with logs. The man who hired me did not tell me how and didn't ask me if I knew. I worked there on Saturday. On Sunday night Mr. Garripy asked me to go to work inside on the slasher. I got a glimpse of the slasher before that. I was upstairs getting a drink of water. I don't remember particularly taking a look at the slasher. I say I was taking a glimpse of the mill. That is the only time I got into the mill after I began to work there. . . . . I commenced work at 7 o'clock Monday morning. A man showed me how to oil the slasher. McDonald went with me to the slasher. He is not here. No one else said anything to me about it. The accident happened about 8 or 9 o'clock—close to 9 o'clock, I think. I think I only worked about two hours. Maybe it was pretty nearly three hours. It was close on to that. Someone went in and told me how to oil up. The saws were not going when I went in. The mill started up and started the saws. There is a lever there to throw the slasher on. McDonald told me how. He showed me how to start up the slasher. . . . . There is about a three-foot space running cross-wise along the side of the dead rolls, and from there there is an apron commences and runs up a slant to the saws. I think there were five long chains running across this place where I

walked backward and forward. There were about 14 on the incline. The long . chains came out from the dead rolls. There was a place to step up on the platform at one end, and the lever to start and stop was over there. You could not reach it. You used the lever to start and stop the slasher when you have got to stop or start it. When the stuff clogs up you stop the slasher to straighten things up. A lot of slats and slabs get down there and get piled up too high and block up the rollers. When there is a confusion and it gets clogged up, I stop the slasher and straighten the stuff up with the picaroon. I don't stop the slasher unless I cannot handle it otherwise. Those chains don't run so very fast. They run quite slow. The endless chains on the flat platform don't go up the incline. They go through the floor. I have noticed how these chains operate since I got hurt. I didn't know and I didn't notice that they went through the floor while I was working there. I didn't take notice of the fact that the endless chains went through the floor. I suppose I knew it. I didn't see the chain go through the floor before I got hurt. I knew that the chains working up the incline came out of the floor. I did know that the incline chains or short chains came out of the floor, but didn't know the long chains went into the floor. I might have known it, but I didn't stop to think about it or look up anything about it. I was too occupied and too busy. I think the slasher is a pretty dangerous place to work. I was straightening out the boards. I didn't have any time to think or look things over to see where the long chains did go. The picture you show me is a picture of the slasher on which I was injured, except that I see some things missing here. There was a plank on that roller case that stuck out about 18 inches where he had to go around. Other than that, the picture is a representation of the slasher where I was hurt. . . . . The incline chains came up out of the floor. I went down there and looked at it and I know they came out of the floor. I guess I knew that before I was hurt. They must have come out there. . . . . . I didn't stand on the chains; I stood between them. I kept off them as much as possible. I had to get out between the chains, but I didn't get onto the chains

at all. I certainly aimed to keep off the chains. If I stood on the chains and stayed there long I would go through the saws. Outside of the saws the only danger was from getting on the chains. I said I was looking out for the chains so as not to fall down upon them. I tried to keep off them. I would not step on top of them. I guess I knew that stepping on them was a dangerous thing. I didn't think anything about whether the long chains went through the saws. It would not be dangerous to step on the chains if you stepped off again. When I got hurt I was in front of them dead rolls stepping backward, and I stepped in that hole. . . . . As I stepped back I stepped into that hole with my toe. I didn't step on the chain before it went into the hole. I stepped into the hole in the first instance. I don't think I saw those other holes. I was walking backward and forward on this flat space as shown in the picture. I stepped over the chains. I could see the chains moving; I didn't notice to see whether they went through the floor. No, sir, I didn't pay any attention to that, I was too busy. If I knew what dangers there were, I looked out for what I knew of; as to whether I knew the chains were going through the floor, it didn't enter my head at all. No, sir, I couldn't see all of those just as we can see it now, because there was a whole lot of stuff down there when I started to work, slabs and stuff, over these holes, mostly covered up. After a few revolutions there were some more coming; I had to walk backward and forward in there. If my attention was drawn to it, I would have seen where those chains go through the floor; that picture would look pretty much like the slasher if you had covered it up with slabs and dirt as it most generally is; a lot of slabs on there, bark, dirt. I walked through there; I could step over the pieces; I had to go down there and straighten things up; I don't think I could see every one of those holes, because they were covered up more or less. If there was a hole open, I could see it unless I was looking some place else; I didn't see any hole. I think it was longer than eight weeks when I went back to measure those holes. . . . . I didn't intend to step on the chain; probably I was trying to avoid the chain when

I stepped back, I don't know. I stepped in the hole; I didn't step on the chain; I didn't know the hole was there; I knew the chain was there. No, sir, I didn't intend to step on the chain instead of the hole, I was stepping back; I didn't know the hole was there. I knew the chain was back of me.''

There is evidence in the record which shows that the hole into which the plaintiff stepped and where the accident occurred was larger than required for the chain to pass through, and the photograph of the slasher introduced in evidence clearly shows that the hole is larger than the other holes through which the other chains used pass. It is further shown by the evidence that this hole where the accident occurred is in plain view and open, and can easily be seen and detected by anyone passing over or about where the same is, when there are no slabs or lumber upon the chains, and that a man walking back and forth attending the slasher would have a chance and would be forced to observe the hole in question through which the chain went and where the accident occurred. The chief danger, apparently, of an accident, by stepping into the hole, would result from the fact that in operating the slasher the operator may not always be facing the hole. In other words, while attending to his duties he may be walking backward and into the hole without seeing it. The evidence also shows that the size of the hole might have been reduced without interfering in any way with the operation of the chains passing through it, and the floor around the hole might have been built closer to the chain or might have been covered over with steel and thereby have prevented one from stepping into the hole.

From this evidence the jury was required to determine whether or not the appellant was guilty of negligence in not providing a safe place for the respondent to work, and in permitting the slasher to be used in the condition in which the evidence in this case shows it to have been. It is a well-recognized principle of law that it is the duty of the master to furnish the servant with a reasonably safe place in which to work, and in default he is guilty of negligence. What is a reasonably safe place, where there is a conflict in the

evidence, is a question to be considered and determined by the jury where there is a jury trial. In this case it was the duty of the appellant to make the place where the respondent was ordered to work reasonably safe for such employment, and if the appellant permitted the hole to be of such size that it was dangerous for one working around it, and an accident occurred without any fault or negligence of the respondent, then the appellant would be liable.

In the case of *Maloney v. Winston Bros. Co.*, 18 Ida. 740, 111 Pac. 1080, this court said: "It is contended by the appellant that plaintiff undertook an extrahazardous task, and that the ordinary risks of such a service were consequently assumed by him. This position is correct to the extent that he assumed the risk incident to the employment, but he did not assume any additional burden of risk superimposed by reason of the master's neglect of the duty that rested upon him to have the place inspected and maintained in a reasonably safe condition as a place of the kind in which the employee might work."

In the case of *Craesafulli v. Winston Bros. Co.*, 18 Ida. 158, 108 Pac. 740, this court said: "It is contended that the fellow-servant doctrine, assumption of risk and contributory negligence rules apply to the facts of this case. We cannot agree with counsel in that contention, as it is clear to us that the rules applicable to the doctrines mentioned are not applicable to the facts of this case. Under those facts, it was the duty of the master to see that said staging was made safe for the purposes for which it was erected."

In the case of *Crawford v. Bonners Ferry Lumber Co.*, 12 Ida. 678, 87 Pac. 998, in discussing the relation of master and servant this court said: "There is a wide range in the decisions of appellate courts on the relation of master and servant, and under what circumstances and conditions the master is responsible for personal injuries to the servant. It would seem that justice and equity would require the master to use all reasonable means to protect the servant from injury while in his employ; any other rule would be harsh, unjust and unreasonable."

In the case of *Baltimore & O. R. Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. ed. 772, the supreme court of the United States enters into a very exhaustive discussion of this subject and reviews a large number of authorities, and has announced the rule which is generally followed in the courts of this country. The court says: "Again, a master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools and the machinery, than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools and the machinery owes a positive duty to his employee in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employee by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty." (*Doyle v. Missouri K. & T. Trust Co.,* 140 Mo. 1, 41 S. W. 255.)

Under the law it was the duty of the appellant company to provide the respondent with a reasonably safe place at which to work, and with reasonably safe machinery, tools and implements with which to work, and if the appellant discharged such duties and the employment was accepted by the respondent, then the respondent assumed all the risks and hazards incident to or attendant upon the particular employment or the performance of the particular work. This duty being thus imposed upon the appellant, the question whether the appellant was negligent was for the jury to determine, where there is a conflict in the evidence, and the jury having concluded by their verdict that the appellant was negligent,

this court will not reverse such judgment on the ground that the evidence does not support the verdict.

Still, admitting that the appellant was negligent, we must also determine whether the respondent was negligent and whether the respondent's negligence contributed to the injury. As shown by the respondent's testimony, he had had some experience in operating slashers. He had not done any labor upon the slasher where the accident occurred, but he had some knowledge of how slashers were operated and how they were constructed. The particular place where the respondent was working when injured was not familiar to him, and its condition was not explained to him, and he was not in any way advised of the fact that the place where the injury occurred was more dangerous than ordinarily would be found at a similar place, neither was he cautioned or advised of the dangerous condition of the place. When he went to work on the morning of the accident the place about where the accident happened was covered over with slabs and slats and dirt and wood which had been placed there the night before, and the hole where the accident occurred was not visible or observable to him and could not be seen. Whether these obstructions were afterward removed by being carried by the chains up to the saws, and the hole was thus opened to his view and could be seen by him at the time of the accident, there seems to be a conflict in the evidence, the respondent having testified positively that the place was not observable, while other witnesses who were acquainted with the situation, although not present, testified that the place must necessarily have been observable to him by his passing about it, and that he would have been able to see the place had he looked and used his senses at the time the accident occurred. This being the condition of the evidence, we think there was sufficient conflict to require the services of the jury to determine such question. Different persons might have formed different opinions or conclusions as to whether the duties of the respondent were such as to require his attention to the extent that he was not in a position to observe the times at which, if at all, such danger was exposed to his view or observation.

This brings us to a consideration of the question whether the respondent is entitled to recover notwithstanding the fact that the respondent was also negligent. In the case of *Rippetoe v. Feely,* recently decided by this court and reported *ante,* p. 619, 119 Pac. 465, this court announced the rule as to contributory negligence as follows: "The rule above in a broader sense means that to prevent a recovery by reason of contributory negligence the person injured must have been guilty of a want of ordinary care, and that such want of care was a proximate cause of the injury." Under this rule the jury has determined that the respondent was not guilty of contributory negligence. The evidence shows that the respondent had experience in operating slashers in sawmills at various places and was somewhat familiar with the construction of slashers and their operation. He, however, was unacquainted with the particular plan of the construction of the slasher where the accident occurred. He had never been inside of the mill before he went to work, and on the morning of August 4, 1908, he had no acquaintance with the manner in which the chains which carried the slabs and lumber up to the saws passed into the floor, or the size of the holes through which such chains passed. He testified that when he went to work that morning the chains and holes were covered with slabs and slats and boards and dirt, which had been placed there the night before, and that he did not see the hole where the accident occurred, at the time he went to work, and had not seen it up to the time the accident occurred. This evidence is uncontradictory except by evidence showing the probability of the truth of his statement, by reason of his opportunities while working during the period of time he did work at the place or near the place where the accident occurred, to learn the condition and danger. Witnesses testified that he should have seen it or would have seen it, and that it was probable he did see the hole and knew of its size at the time the accident occurred. The jury, however, evidently weighed all this evidence and accepted the statement of the plaintiff as to whether or not he knew of the danger and what might happen to him if he stepped upon the chain or into

the hole where the accident occurred. He certainly assumed no risk at the time he began his employment upon the slasher which might arise by reason of the size of the hole where the accident occurred, for at that time he knew nothing whatever as to the size of the hole or that it was of sufficient size into which he might place his foot. The danger was not exposed and ordinary care would not have disclosed such danger. Did he, then, while working and performing the duties assigned to him, exercise the ordinary care required of him, and guard against the danger to which he might be exposed if he stepped into the hole where the accident occurred? While it is true that the respondent assumed the ordinary risk that would arise from such service, yet he did not assume any additional risk imposed upon him by reason of the neglect of the appellant, in the duty that rested upon it to make the place where the respondent was to work in a reasonably safe condition. (*Maw v. Coast Lumber Co.*, 19 Ida. 396, 114 Pac. 9; *Maloney v. Winston Bros., supra.*) From all the evidence in the case we think the jury were justified in concluding that the respondent was not guilty of contributory negligence.

It is also contended that the trial court committed error in permitting the plaintiff to show that the slasher in controversy was not constructed in a safe way and in the manner that slashers are usually constructed, and specifically direct attention to the inquiries made of the witness Ray Estes, as follows: This witness testified that he had had fifteen or sixteen years' experience in sawmills all over the country and had worked in lath-mills and with slashers and had seen in operation two or three hundred slashers in different states, and was asked the following questions:

"Q. What space is ordinarily allowed the hole around the chain on the slasher where the chain goes through the floor? A. Merely space enough to allow the chain to clear itself.

"Q. In your experience with slashers and their construction, would you say it was an ordinary and reasonable way to construct a slasher so that there would be a space of two and a half or three inches one way and four or five inches the wide way of the chain for a slasher to go through the floor?"

The answer was "Decidedly not," and that it was not necessary.

"Q. If the opening down through which the slasher chain passes in the floor was properly constructed and the hole about the chain of sufficient size to permit clearance, could the foot of a person operating over that step into that hole and thus engage his foot in the cog-wheels and chain and suffer injury? A. No, sir; it would be impossible for a man to get his foot in there."

Also to inquiries propounded to Henry Errett:

"Q. What is the proper method of construction in the slasher with reference to the hole about the chain where the chain goes down through the floor? A. In my experience the size of the hole in the floor, it was simply large enough to let the chain and lug that carried the edgings or slabs to the saw go through. No more, no less."

A number of other questions similar to the above were asked and the witnesses were called upon to give opinions as to whether the hole where the respondent received the injury was of the character usually provided for slasher chains going over the floors and through holes in the floors in sawmills where the same were used, and whether the construction was proper and necessary. Counsel for appellant argue that the subject of inquiry was not of an expert character, and that the questions called for an opinion of the witness upon an issue which should have been left to, and was to be determined by, the jury. Most of these questions go to matters which relate to common knowledge of the probability of the injury in case one stepped into a hole the size of the one where the accident occurred, but these questions are intermingled with questions which relate to whether the same was constructed in the manner in which other slashers which were known to be safe and not of a dangerous character were usually constructed. It is a well-known principle of law that expert evidence as to matters of common knowledge can in no way injure anyone, and it is not reversible error to admit such evidence when offered. In the case of *State v. Hendel*, 4 Ida. 88, 35 Pac. 836, this court in discussing this question held: "A

careful examination of the authorities constrains us to believe
. that the question as to the admissibility of expert testimony
must depend largely, if not entirely, upon the circumstances
of each particular case; and where it is apparent, not only
that no injustice has been done, and that the exigencies of the
case seem to warrant or require the admission of such testi-
mony, for a proper and satisfactory presentation of the facts
to the jury, such admission is not error."

In the present case the question as to the negligence of the
defendant in permitting the hole to be in the condition it
was, and permitting it to so remain, was for the jury to de-
termine, and the jury might be very much aided in deter-
mining this question by the evidence showing that it was
maintained in such a manner as to show negligence on the part
of the appellant, or where the facts were such as to require
of the respondent that he should expect and look for defects
in the construction, condition and operation of the chain
through this hole.  This would not necessarily be a matter of
common knowledge, but would be the statements and experi-
ence of men familiar with the subject and might be a very
great aid to the jury, notwithstanding the fact that the very
question which the witness expresses an opinion upon is the
question which the jury must pass upon; and in such cases
the fact that the witness expresses an opinion upon a matter
of common knowledge in giving his testimony is not reversible
error.  A very exhaustive discussion of this subject may be
found in the case of *Hayes v. Southern Pacific Co.,* 17 Utah,
99, 53 Pac. 1001, in which the court, among other things, ob-
serves:

"Counsel for the appellant insist that this action of the
court was erroneous, because, as they maintain, it was calling
for the opinion of the witness on a question that the jury was
to determine.  No objection appears to have been interposed
on the ground that the witness was not an expert, and there-
fore it may be assumed that he was competent to give expert
testimony.  The general rule is that a witness must testify to
facts, and not conclusions.  To this rule, however, there are
exceptions, and we think this question falls within the ex-.

ceptions. The contention of the appellant at the trial was that the coal-sheds were negligently constructed. This was controverted by the respondent, and thus one of the main issues was whether they were properly erected for the purpose for which they were intended. . . . . It was therefore permissible to resort to the opinion of a person possessed of such requisite mechanical skill and experience as enabled him to form a correct judgment as to whether or not the sheds were carefully and properly constructed.'' After discussing this question at length the court quotes from Sutherland on Damages, section 442, as follows: ''There is a growing tendency to the doctrine, if it be not already established, that opinions of ordinary witnesses may be given upon matters of which they have personal knowledge in all cases in which, from the very nature of the subject, the facts, disconnected from such opinions, cannot be so presented to a jury as to enable them to pass upon the question with the requisite knowledge.'' Many other cases holding to this doctrine might be cited but we shall only cite a few: Abbott's Trial Brief, secs. 204, 276; *Grant v. Varney,* 21 Colo. 329, 40 Pac. 771; *Elder v. Lykens Valley Coal Co.,* 157 Pa. 490, 37 Am. St. 742, 27 Atl. 545; *Lee v. Railroad Co.,* 101 Cal. 118, 35 Pac. 572; 12 Am. & Eng. Ency. of Law, 422, 427, 428; *Colorado Midland R. R. Co. v. O'Brien,* 16 Colo. 219, 27 Pac. 704.

The next error discussed is the giving of instruction No. 1 and instruction No. 3, and the same objections are made to both instructions. Instruction No. 1 reads as follows:

''Instruction No, 1. That the servant assumes the ordinary risk incident to the service after the master has used proper care, diligence and caution for the safety and protection of the servant, commensurate with the danger to be reasonably apprehended from the service, and if the master failed to use such care and caution and an injury result therefrom, it is not a risk incident to the employment and the master is liable therefor, unless the danger was open and apparent or the servant had actual knowledge thereof.''

Instruction No. 3 reads as follows: ''That plaintiff had a right to assume and rely and act upon the presumption that

the defendant had used reasonable care in furnishing a reasonably safe floor and bed of the slasher upon which he was required to pass in the duties of his employment, if he was so required to pass, and that plaintiff was not required to search or inspect such floor for defects therein that were not obvious or apparent. He had only to exercise the care that an ordinary prudent person would have exercised under like circumstances.''

The objection to these two instructions is that the plaintiff is made to assume the risk only as to defects which were ''open and apparent.'' It is the contention of the appellant that a servant not only assumes such risks as are obvious and apparent, or of which the servant has actual knowledge, but also assumes such other risks which by the use of ordinary care he might have discovered. In instruction No. 2, however, the court tells the jury: ''That while a servant in accepting employment assumes the ordinary risk incident to it, he does not assume those occasioned by the negligence of the master, and while the plaintiff in the present case assumed the ordinary risks incident to the work he was called upon to perform, he did not assume those, if there were any such, arising from negligence of the defendant, unless they were known to him or unless by the exercise of ordinary care he could have known them.''

It perhaps would have been better form and the rule of law stated more clearly had the trial court incorporated in instructions Nos. 1 and 3 the statement found in No. 2, to the effect that the servant did not assume such risks as arose from the negligence of the defendant, if there were any, unless they were known to him or unless by the exercise of ordinary care he could have known them. In other words, the rule of law should be stated to the jury that a servant in accepting employment assumes the ordinary risks incident to such employment, but that he does not assume such risks as arise out of the negligence of the master, unless such risks are known to the servant, or are of such character that by the exercise of ordinary care on the part of the servant he could have known the same. Taking these three instructions together,

we think the jury were not misled as to the law or misdirected by the court, and that there was no prejudicial error in giving these three instructions.

Instruction No. 6 is especially objected to; this instruction reads as follows:

"That contributory negligence is a matter of defense, and it is not necessary for the plaintiff to either plead or prove the negative of contributory negligence. Contributory negligence is the want of ordinary care on the part of the party injured; that is to say, the want of such care as an ordinarily prudent person would have exercised under the same or similar circumstances, which, either by itself, or concurring with the negligence of the defendant, if any, was the proximate or probable cause of the injury."

The portion particularly objected to of this instruction is the following, found in lines 2, 3 and 4: "And it is not necessary for the defendant to either plead or prove the negative of contributory negligence." The objection made to this instruction is, that the jury are directed that the plaintiff was not required to either plead or prove the negative of contributory negligence. The appellant contends that had the instruction said that the plaintiff need not in the first instance plead or prove the negative of contributory negligence, the instruction would not have been erroneous. The language objected to is an exact copy of Rev. Codes, sec. 4221. That section reads as follows:

"In all actions hereafter brought for damages for injury to person or property, contributory negligence is a matter of defense, and it is not necessary for the plaintiff to either plead or prove the negative of contributory negligence."

This section of the statute simply means, and the instruction given to the jury meant, that it was not necessary for the plaintiff to allege in his complaint that he was not guilty of contributory negligence, and that it was not necessary in proving the allegations of his complaint to prove the existence of facts which showed that he was not guilty of negligence which contributed to such injury. Under the provisions of this statute and under the direction of this instruction, in an action

to recover for personal injury the plaintiff need not allege or prove that the plaintiff did not contribute to such injury by the plaintiff's own negligence, and that contributory negligence was a matter of defense, and if the defendant alleged that the plaintiff did contribute by his negligence to the injury for which the action is brought, the defendant must support such defense by introducing proof, and that the burden of such proof is upon the defendant to support his allegations so plead as a defense.

In this case, in other instructions given, the jury were told that if they should find from a preponderance of the evidence that the plaintiff was injured because of doing something in connection with his employment that an ordinarily prudent man would not do, or he omitted doing something which an ordinarily prudent man would do, then the jury must find for the defendant. But if the plaintiff's own negligent acts or omissions contributed to bring about the injury, then the defendant could not be liable. These instructions fully explain instruction No. 6, and all taken together state the rule correctly as to the burden of proof, and the court did not err in giving instruction No. 6.

Objections are made to other instructions, but from a careful examination of the same we are satisfied that the court very fully instructed the jury, and that when all the instructions are taken together the law was correctly given to the jury. We find no reversible error in the record. Costs awarded to respondent.

Ailshie and Sullivan, JJ., concur.