(April 29, 1910.)

## JOE CRAESAFULLI, Respondent, v. WINSTON BROTHERS COMPANY, Appellant.

[108 Pac. 740.]

INJURY TO EMPLOYEE—NEGLIGENCE OF MASTER—FELLOW-SERVANT—
ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE.

(Syllabus by the court.)

1. *Held,* under the facts of this case that it was the duty of master to see that the scaffold from which the defendant fell and was injured was safely erected.

2. *Held,* that the fellow-servant doctrine, assumption of risk and contributory negligence rules are not applicable to the facts of this case.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. Wm. W. Woods, Judge.

Action to recover damages for an injury alleged to have occurred because of the negligent manner in which appellant had erected a scaffold for the purpose of timbering a tunnel. Judgment for plaintiff. *Affirmed.*

Kerns & Ryan, for Appellant.

The burden of proof is on the plaintiff, where an employee sues for personal injuries alleged to be caused by defective appliances, to prove the employer's failure to exercise the reasonable care required of him by law with respect to such appliances and machinery, and if the appliances are of such common use and not of the character that are used by skilled laborers or workmen, but such as every person is supposed to be familiar with, the same degree of care, if any, is not required. (*Birsch v. Citizens' Electric Co.,* 36 Mont. 574, 93 Pac. 940; *Baltimore etc. R. Co. v. Jones,* 95 U. S. 439, 12 L. ed. 506; 20 Am. & Eng. Ency. of Law, 86, 87, and cases cited; Labatt on Master and Servant, sec. 832; *State v. Malster,* 57 Md. 287; *A. T. & S. R. Co. v. Ledbetter,* 34 Kan. 326, 8 Pac. 411.)

If the circumstances relied upon to show negligence are consistent with ordinary care on the part of the master, the charge of negligence will fail for want of proof. (20 Am. & Eng. Ency. of Law, 87, 88; *Kincaid v. O. S. L. R.,* 22 Or. 35, 29 Pac. 3.)

The defendant had the right to use any sort of appliances it saw fit, and if there was any defect in the appliances, the plaintiff assumed the risk by continuing to work therewith. (*O'Rourke v. U. P. Ry. Co.,* 22 Fed. 191; *Alcorn v. Chicago Ry. Co.,* 108 Mo. 81, 18 S. W. 191; *Baltimore etc. Ry. Co. v. State,* 75 Md. 152, 32 Am. St. 372, 23 Atl. 310; *Gibson v. Erie Ry. Co.,* 63 N. Y. 453, 20 Am. Rep. 552.)

There is nothing to show that the shift boss did not direct that the ladder and plank be erected in the usual and best manner. We have a right to presume, in the absence of any evidence to the contrary, that he did so.

"Where the evidence shows that the acts complained of resulting in the injury were attributable to a fellow-servant, the

·employer cannot be held to respond in damages for such injury." (*Zienke v. N. P. Ry. Co.,* 8 Ida. 54, 66 Pac. 828; *Larsen v. Le Doux,* 11 Ida. 49, 81 Pac. 600.)

"Before a servant can recover he must show that the injury did not arise from a defect obvious to himself or which by the exercise of ordinary care he might have known; and he must show it was not from hazard incident to the business." (*Minty v. U. P. R. Co.,* 2 Ida. 471, 21 Pac. 660, 4 L. R. A. 409; *Patton v. Texas & P. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. ed. 361, 363.)

"A shift boss in charge of a gang of men whose duty it is to direct the men when, where and how to work, to supervise them in their labor and to see that they properly perform it . . . . is a fellow-servant of the men on his shift, the risk of whose negligence they assume." (*Weeks v. Scharer,* 111 Fed. 330, 49 C. C. A. 372; *Anderson v. Winston,* 31 Fed. 528.)

Where it appeared that plaintiff was injured by the falling of a plank, but there was no evidence as to how it happened to fall, there could be no recovery. (*McGowan v. Nelson,* 36 Mont. 67, 92 Pac. 40.)

Where the place that an employee is to work is a room in a coal mine or other mine, or tunnel, the place is provided in the progress of the work by the employees themselves. It is made secure or otherwise by the way in which they perform their respective duties. It is just like the scaffold upon which painters or builders stand in prosecuting their work. (*Shaw v. Min. Co.,* 31 Mont. 138, 77 Pac. 515; *Cummings v. Reduction Co.,* 26 Mont. 434, 68 Pac. 852.)

"A mere foreman or boss of a gang of men working in a mine, employed in the same department of business and under a common head, is a fellow-servant with them, whether he has or has not authority to engage and discharge the men under him." (*Alaska Treadwell Gold Min. Co. v. Whelan,* 168 U. S. 86, 18 Sup. Ct. 40, 42 L. ed. 390; *Baltimore & O. R. Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. ed. 773; *Hough v. Texas & P. R. Co.,* 100 U. S. 213, 25 L. ed. 612.)

Featherstone & Fox, and Gray & Knight, for Respondent.

There is a duty devolving upon the master to furnish a servant with a reasonably safe place in which to work. This is a positive duty and cannot be delegated, and if the master attempts to delegate that duty to any person of whatsoever rank, the acts of such a person in this respect are the acts of the master, and the master consequently responsible. (*Mather v. Rillston*, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. ed. 470, 18 Morr. Min. Rep. 165; *Norman v. Wabash R. Co.*, 62 Fed. 728, 10 C. C. A. 617; *Railway Co. v. Baugh*, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. ed. 772; *Western Coal Co. v. Ingraham*, 70 Fed. 219, 17 C. C. A. 71; *Rowden v. Schoenherr Mining Co.*, 136 Mo. App. 376, 117 S. W. 695; *Crist v. Wichita Gas etc. Co.*, 72 Kan. 135, 83 Pac. 200; *Crawford v. Bonners Ferry Lumber Co.*, 12 Ida. 678, 87 Pac. 998, 10 Ann. Cas. 1.)

It is the absolute duty of the master to furnish safe scaffolds, unless by the contract of employment the servant has assumed such duty. The master is not absolved from the consequences attendant upon his failure to do so by having merely furnished sufficient suitable material. (*Metcalf Co. v. Nystedt*, 203 Ill. 333, 67 N. E. 765; *Chicago etc. Ry. Co. v. Maroney*, 170 Ill. 526, 62 Am. St. Rep. 396, 48 N. E. 953; *McBeath v. Rawle*, 192 Ill. 626, 61 N. E. 847, 69 L. R. A. 697; *Donahue v. Buck & Co.*, 197 Mass. 550, 83 N. E. 1090, 18 L. R. A., N. S., 476; *Thompson v. Bartlett*, 71 N. H. 174, 93 Am. St. 504, 51 Atl. 633; *Kansas City Car & Foundry Co. v. Sawyer*, 7 Kan. App. 146, 53 Pac. 91; *Blackman v. Thompson etc. Co.*, 102 Ga. 64, 29 S. E. 120; *Bloomquist v. Chicago etc. Ry. Co.*, 60 Minn. 426, 62 N. W. 818; *Carlson v. Northwestern Tel. Exchange*, 63 Minn. 428, 65 N. W. 914; *Lindvall v. Wood*, 41 Minn. 212, 42 N. W. 1020, 4 L. R. A. 793; *McNamara v. Macdonough*, 102 Cal. 575, 36 Pac. 941; *Withiam v. Tenino Stone Quarry*, 48 Wash. 127, 92 Pac. 900.)

The servant does not assume all of the risks of his employment, but only such as are usual, ordinary and remain so incident after the master has taken reasonable care to prevent or remove them, or, if extraordinary, such as are obvious and

expose him to danger so imminent that an ordinarily prudent man would anticipate injury as so probable that he would not enter upon or remain in the employment. (*Malott v. Hood*, 201 Ill. 202, 66 N. E. 247; *Clark v. Wolverine Portland Cement Co.*, 138 Mich. 673, 101 N. W. 845; *Revolinski v. Adams Coal Co.*, 118 Wis. 324, 95 N. W. 123; *Drake v. San Antonio & A. P. Co.*, 99 Tex. 240, 89 S. W. 409.)

SULLIVAN, C. J.—This action was brought to recover damages in the sum of $1,975 for injuries alleged to have been sustained by the plaintiff on or about the 2d day of December, 1908, while in the employ of the appellant corporation, by reason of his having fallen from a scaffolding when engaged in holding a plumb-line for the purpose of plumbing a post used in timbering a tunnel. The appellant at the time of the injury was engaged in driving what is known as the St. Paul Pass Tunnel on the Chicago, Milwaukee & St. Paul Railway through the Bitter Root mountains, which mountains form the dividing line between the states of Montana and Idaho. The accident occurred on the Montana side of the dividing line.

It appears from the record that said tunnel was driven in substantially the following manner:

There was what is known as the heading, which was the upper or forward section; below this and several hundred feet behind the face of the heading was the bench or lower portion. This tunnel was permanently timbered as near up to the face of the bench or lower portion of the tunnel as practicable; sometimes within a few feet of the breast of the bench. The permanent timbers were set from two to four feet apart, as the exigencies of the case demanded, and were erected as follows: First, a permanent foot block or mud sill was placed on the floor of the tunnel. Upon this was set what is known as the plumb-post or permanent timber 12x12 in. square. The post was raised and driven in at the top under the wall-plate by the use of hammers. In order then to plumb the post a scaffold or staging was erected along the sides of the tunnel as follows: A piece of lagging was nailed

between two plumb-posts on each side of the tunnel, and on this was placed what is known as a spreader or cross-piece (a piece of timber 4x6 inches) crosswise of the tunnel. Against the face or breast of the bench a ladder was placed, and from this spreader a plank (4x6) was placed, resting one end upon the spreader and the other on a rung of the ladder. Upon the staging a man was sent with a plumb-line which he would hold up against the wall-plate while the other men would hammer the post into line.

Supervising the entire construction of the tunnel was a shift boss, who had authority to hire and discharge men working in said tunnel. The men were classified as machine-men, helpers, muckers, steam shovel engineers, cranemen, skinners, switchmen, motormen, breakmen, nippers and ditch-men. The respondent was a mucker. The evidence shows that the shift boss was intrusted with the duty of supervising the men, directing the work, pointing the holes for the air drills and had general supervision of the work. It appears that under this shift boss there were from thirty-five to forty-five men. The staging used for the purpose of plumb-ing the plumb-posts was constructed by the men at work under direction of said boss. The shift boss directed the respondent to take the plumb-line and go upon the scaffold-ing and assist in plumbing the posts, and while engaged in that work, the testimony shows that he felt the plank on which he was standing move; he called to the shift boss in-forming him of that fact, and the shift boss told him to climb on one of the cross-pieces. The scaffolding fell immediately and before he had time to do as directed by the boss. The result to the respondent was what the physicians call a Pott's fracture, being a small fracture of the lower end of the fibula, that is, the external bone of the leg. About two inches of it was broken from the shaft of the bone. The bone was properly set, the case properly cared for and the respondent suffered no permanent injury.

The case was tried before a jury and a verdict was rendered in his favor in the sum of $800, and judgment was entered accordingly. A motion for a new trial was overruled.

by the court, and this appeal is from the judgment and order denying the new trial.

Eleven errors are assigned which go to the admission and rejection of certain testimony, denying the motion for a nonsuit, the giving and refusing to give certain instructions, and the sufficiency of the evidence to sustain the verdict.

It is alleged in the complaint that the scaffold from which the respondent fell was erected by the appellant; that it was unsafe and insecure, and that the ladder upon which one end of the plank from which the respondent fell was improperly and insecurely set or fastened thereto, and that said scaffold was improper and insufficient for the purpose for which it was constructed. It is contended that respondent failed to prove said allegations. As to who actually erected the scaffold, there is some conflict in the evidence. The plaintiff testified that he assisted in erecting the scaffold on the left-hand side of the tunnel and that he did not assist in erecting the one on the right-hand side from which he fell. The shift boss, Newhouse, was present, and when the muck had been cleared away, he directed the men to erect the scaffolds and to plumb the posts. There is some evidence tending to show that the shift boss assisted in putting up the scaffold that fell, but we think the evidence all taken together shows that the muckers and other workmen there erected that scaffold under the direction of the shift boss, and that the plaintiff did not assist in erecting it. The question is then presented whether it was the duty of the shift boss, as a representative of the appellant, to see that said scaffold was safe and whether that was a part of the duty devolving upon the master.

Newhouse testified that he had thirty-five to forty-five men under him, and that his duties were to supervise the work in connection with everything that the men he had under him were required to do. His testimony is a little indefinite as to just what his duties were, but witness Phelan, who testified on the part of the plaintiff and had acted as shift boss, testified that the duty of the shift boss was to show the men what to do, and that the duty of the muckers was to do

what the shift boss told them; that the shift boss had charge of the setting of the ladder and the plank, and is supposed to look out for them and see that they are safe, and testified as follows: "As to what must be done in order to make that plank safe for a man to go up and stand on it and hold the plumb-bob, will say you are supposed to make the ladder safe in the first place, see that the two legs are set down on good, solid ground, and then put the plank across and block it so that it can't move. If that ladder is properly placed, as I have stated, and the plank is properly fixed, the plank cannot slip off the ladder or the ladder fall down." It will be observed that this shift boss testified that it was the duty of the shift boss to see that the ladder and planks composing the scaffold were put up in a safe condition. He also testified that the ladders never looked safe to him. The witness Newhouse gave his opinion as to what caused the board to fall, as follows: "What caused the board to fall was that the plank rested about eight or ten inches on the top of the spreader, and this here ladder evidently was not placed solid on the top against the rocks, and it was caught somewhere above the center and the ladder leaned against the rock and pressed over the top, and therefore pulled the plank along with it, and the end of the plank dropped off that spreader and dropped four or five steps down the ladder; at the same time the ladder still remained standing up."

The evidence also shows that the respondent had been at work in that tunnel as a mucker and had assisted very often in erecting the scaffolds and in plumbing the posts for about four months. It also shows that on the day the accident occurred, all except two or three of the men who were working there with him had only been at work there for two or three shifts. This would indicate that they were not very familiar with the method of erecting the scaffolds for plumbing the posts. It also may be inferred from the evidence that the scaffold from which the plaintiff fell was erected by those inexperienced men, this shift boss Newhouse being present and directing the work. From the testimony of Phelan, it appears that with the exercise of ordinary care,

the shift boss could have made the staging safe, and that it was the duty of the shift boss to do so.

We conclude from all of the evidence, there being a conflict upon some of the material points, that it was the duty of the appellant to see that said scaffold was safe. If the ladder had been properly set and the plank that formed the floor of the scaffold had been properly blocked, the evidence shows that the accident would not have occurred, and we think from the facts as shown by the record that it was the duty of the appellant to see that the scaffold was properly erected. Had the respondent fallen from the platform that he had erected himself, a different question would be presented. The evidence shows that the platform from which respondent did fall was erected by inexperienced men and under the facts it was the duty of the shift boss, for his principal, to see that the same was safely erected. The allegations of the complaint were established by the evidence, and the verdict was fully supported by it.

It is contended that the fellow-servant doctrine, assumption of risk and contributory negligence rules apply to the facts of this case. We cannot agree with counsel in that contention, as it is clear to us that the rules applicable to the doctrines mentioned are not applicable to the facts of this case. Under those facts, it was the duty of the master to see that said staging was made safe for the purposes for which it was erected.

Having arrived at that conclusion, it will be unnecessary for us in this opinion to take up each specific error assigned and pass upon it. However, we have examined all of the errors assigned, and fail to find reversible error in the record. The judgment is therefore affirmed, with costs in favor of respondent.

Stewart and Ailshie, JJ., concur.