(December 5, 1912.)

## LESTER L. SMITH, Respondent, v. POTLATCH LUMBER COMPANY, a Corporation, Appellant.

[128 Pac. 546.]

NEGLIGENCE—NONSUIT—SUFFICIENCY OF EVIDENCE.

(Syllabus by the court.)

1.   Where a motion is made for a nonsuit at the close of the evi-
dence on the part of the plaintiff, upon the ground that the evidence
is insufficient to warrant the submission of the case to a jury, and
the motion is denied, and evidence is thereafter offered by the de-
fendant, the ruling of the trial court is not reviewable upon appeal
from the judgment or from the order overruling the motion for a
new trial.

2.   It is the duty of the master to furnish the servant with a
reasonably safe place at which to work, and with reasonably safe
machinery, tools and implements with which to work, and if the em-
ployer discharges such duties and the employment is accepted by the
employee, then the employee assumes all the risk and hazard incident
to or attendant upon the particular employment or the performance
of the particular work.

3.   Where no evidence is offered which shows that an animal blind
in one eye is more likely to kick than if such animal had two good
eyes, the jury or court cannot presume that such horse, blind in one
eye, will be more liable to kick than he would if he had two good
eyes.

4.   Where an employer employs an employee to work a horse in a
particular way, and at a certain place, and such horse is unbroken
to such work, and such fact is known by the employer and also the

employee, and the employee· knows as much about the horse and its character and its likelihood to work and what it will do and how it may act as the employer, and said employee commences using the horse and uses it for two hours, and by such use learns that the horse has not been broken to such work, such employee assumes the risk incident to the breaking of the horse and its use in being broken, which was unknown to the employer, and could not have been known to the employer, and the employee is fully advised of the character of the horse, then the employee assumes the risk incident to the breaking of the horse to do such work.

5.  The evidence in this case examined, and *held* that there is no substantial evidence to sustain the verdict and judgment from which the appeal is taken.

APPEAL from the District Court of the Second Judicial District for Latah County.  Hon. Edgar C. Steele, Judge.

Action for damages for personal injuries.  Judgment for plaintiff.  *Reversed.*

Edward J. Cannon and George M. Ferris, for Appellant.

The servant assumes the risks which are open and obvious and which are readily understood and appreciated by a person of ordinary prudence and intelligence.  It is not necessary that the servant receive notice or information concerning an instrumentality or a danger from the master himself, but it is sufficient if he acquire that knowledge from any source whatever.  (26 Cyc., Master and Servant, p. 1170; *Coullard v. Tecumseh Mills*, 151 Mass. 85, 23 N. E. 731; *Sidwell v. Economy Coal Co.* (Iowa), 135 N. W. 59.)

Where the plaintiff relies upon the fact that the master furnished him with a vicious horse, he must show three facts: First, that the horse was in fact a vicious horse; second, that the master knew that the horse was a vicious horse, or by the exercise of reasonable care should have known that fact; and third, that plaintiff had no knowledge or means of knowledge of the vicious character of the horse.  (*Arkansas Smokeless Coal Co. v. Pippins*, 92 Ark. 138, 122 S. W. 1013, 19 Ann. Cas. 861; *Weigand v. Atlantic Refining Co.*, 189 Pa. 248, 42 Atl. 132; *O'Connell v. Mooney*, 32 Misc. Rep. 641, 66 N. Y.

Supp. 486; *McCready v. Stepp,* 104 Mo. App. 340, 78 S. W. 671; *McGovern v. Fitzpatrick,* 148 App. Div. 34, 131 N. Y. Supp. 1048; *Finney v. Curtis,* 78 Cal. 498, 21 Pac. 120.)

T. B. West and Wm. E. Lee, for Respondent.

Respondent was not guilty of contributory negligence. The testimony shows that there was nothing going on that was calculated to frighten the horse except that she was being driven single. She was unbroken to drive single. She kicked respondent, and the natural inference as to the reason was that she was being driven and worked in a way she was not used to. (*Wilson v. Sioux Consol. Min. Co.,* 16 Utah, 392, 52 Pac. 626.)

It was the duty of the appellant, in the first place, to provide a safe horse for respondent to use; and in the second place, it was the appellant's duty to inform respondent that this horse was unbroken to do the particular work that respondent was ordered to do, and to inform respondent that the horse was unbroken to work single. (*Maw v. Coast Lumber Co.,* 19 Ida. 396, 114 Pac. 9; *Knauf v. Dover Lumber Co.,* 20 Ida. 773, 120 Pac. 157; *Maloney v. Winston Bros.,* 18 Ida. 740, 111 Pac. 1080; *Crawford v. Bonners Ferry Lbr. Co.,* 12 Ida. 678, 87 Pac. 998, 10 Ann. Cas. 1; *Wheeler v. Oregon R. & N. Co.,* 16 Ida. 375, 102 Pac. 347.)

STEWART, C. J.—This is an action to recover damages for personal injuries received by respondent while in the employ of appellant from a kick by a horse. The jury found a verdict in favor of the respondent for the sum of $1,000 and costs, and judgment was rendered accordingly.

After the return of the verdict a motion was made by the appellant "for an order granting to it a judgment in its favor and against the plaintiff herein, notwithstanding the verdict rendered in favor of said plaintiff and against this defendant on a former day of the present term of this court, to wit, on the 14th day of May, 1912, and also the judgment entered thereon, because there is no substantial evidence to authorize or justify said verdict or the judgment thereon in favor of said plaintiff and against this defendant." This motion was

denied and this appeal is from the judgment rendered on the 14th day of May, 1912, for the sum of $1,000, and also from the order overruling and denying the defendant's motion for judgment notwithstanding the verdict.

The first error assigned and presented on appeal is, that the court erred in denying appellant's motion for a nonsuit renewed at the close of all the evidence in the case. The second error is, that the court erred in receiving the verdict of the jury, and ordering judgment entered thereon. The third error is, that the court erred in denying appellant's motion for judgment *non obstante veredicto.* The fourth error is, the evidence is insufficient to sustain the verdict or judgment thereon.

The first assignment of error is not well taken. In the case of *Rippetoe v. Feely,* 20 Ida. 619, 119 Pac. 465, this court held:

"Where a motion is made for a nonsuit at the close of the evidence on the part of the plaintiff upon the ground that the evidence is insufficient to warrant the submission of the cause to a jury, and the motion is denied and evidence is thereafter offered by the defendant, the ruling of the trial court upon the motion is not reviewable upon appeal from the judgment or from the order overruling the motion for a new trial."

In this case the appellant, defendant in the trial court, introduced evidence; hence the motion was properly denied.

The second error is too indefinite and uncertain to determine any question in the case.

The third error will be considered hereafter in connection with the right to present such motion.

The fourth error is the one upon which the appellant relies for a reversal, and this relates to the question of whether there is sufficient evidence to sustain the verdict and judgment.

Counsel for appellant vigorously contend in this case that all that is required of the master is that he use reasonable care to furnish instrumentalities that are reasonably safe and adapted for the purpose for which they are intended. He is not an insurer, and that seems to be the only theory upon which the master can be held liable in this case; that the respondent understood before he took the horse out of the barn

that it was not broken to do the kind of work it was taken out to do, and that with full knowledge of this fact he assumed any risk there was incident to working with the horse, and he had knowledge which he obtained by actually using the horse; that he assumed any risk incident to working with the horse, as a matter of law.

While counsel for respondent contend that it was the duty of appellant, in the first place, to provide a safe horse for respondent to use, and, in the second place, it was the appellant's duty to inform the respondent that his horse was unbroken to do the particular work that respondent was ordered to do, and to inform respondent that the horse was unbroken to work single.

The evidence in the case is not very much in conflict, and clearly shows the facts to be about as follows: That on the 1st day of February, 1911, the respondent was employed by the appellant to drive a horse by the planer hauling the truck at the appellant's saw-mill, and that he worked under an employee by the name of Wilson, and that another employee by the name of Van Hoter had charge of the horses; that Van Hoter told the respondent what horse to take out. Van Hoter was barn foreman for the company. The duty of the respondent under his employment was to hitch on to the trucks with a cross-bar, and to hitch on to the corner of the truck, which had a chain with a hook on it, so that it would catch on the load and switch them to the planer, and stop them so that they would not run to the machine, and then block them so that they would not go back or go either way. The horse was a new horse on there, and when the respondent drove the old horse they would turn nearly around, but this horse you had to take hold of and pull around, and he drove him up, and after he unhooked the chain dropped, and as he took the chain up to hook it on, the horse kicked. At the same time he turned, and he fell down; didn't faint away, but got dizzy and went down. He had lines on the horse and pulled on the line for him to turn, but the time he turned the horse he did not come in contact with the horse; he did not hit the horse with a stick; he had no stick; did not hit him with any-

thing; he did not touch the horse when he was fastening the chain to the single-tree at the time he was kicked; the horse was blind in one eye, and he was on the blind side of the horse; he had been working for the company nearly four weeks; he commenced working the horse about 1 o'clock and it was about 3 o'clock that his watch stopped; it broke the watch all to pieces; he was kicked in the abdomen and on the hand; broke the bone. Van Hoter told him that he had a new horse; he had the horse ready and was starting out of the stable; he said, "Here is a new horse for you to take out; take him out and work him, and leave old Jim in"; he told him he did not want to work him; he had not been there long enough and did not understand breaking them in; Van Hoter said that horse had to be worked; to get him at noon when he came in; he would have him harnessed; so he took the horse out; Van Hoter showed him the horse; he did not pay any attention to him; he did not know anything about any of the horses; when he first hitched the horse he hitched him on to an empty load, and he would pull up against the chain, and backed up, and he couldn't drive him, and he hung the lines onto him, and led him by the bit, and he still did that, and he got a stick and used it, and got him so he would take an empty truck, and he drove him with the empty truck back and forth about a half hour; he worked very well then up to the time he was kicked.

This is the respondent's statement of the facts from the time he first had any knowledge of the horse up to the time he was kicked. This evidence was corroborated by other witnesses. It was shown by other witnesses that the horse had been used merely as a substitute for four months prior to the time she kicked respondent in all kinds of work double with other horses; that it was hitched up with another horse and used to clean the barn, and when the wood horses or the general team needed shoeing it was substituted.

Van Hoter, who had charge of the horses, testified: "Well, we bought horses there right along, generally four year old colts, probably some of them aren't broken, and we tried to give them to some good men, and cautioned them to take them

out there to break, haul a small load, and keep on and keep on, and in four or five days they are pretty well broke; that is the way we do it; we don't put them in a bad place to break them. Where this horse was placed it was not much of a job to break the horse in to work single unless the man who has charge of her would fool with the horse.''

Van Hoter testified that when he told the respondent to take the horse out he told him he wanted to work her, and not to abuse her, and if she did not act right to bring her back; he said this because she was not broken to work single.

Van Hoter further testified: ''I never found anything wrong about her; I fed her all the time and went around her all the time cleaning and harnessing her and done everything; I had her at work, all kinds of work with another horse; I used to hitch her up with another horse, and when the wood horses or the general team wanted shoeing, I had put her in at places to work until I got the other one shod; so far as I knew I never knew anything wrong with her; I could say I have went in on the left side and fed her, and that is the side a man usually goes in on to feed a horse, and I fed her and she never offered to step around on me or anything. I could not say whether the fact that she was blind made her in any way sensitive.''

The respondent also testified that on the same afternoon he was kicked that this same horse had kicked once before; that the men had run an empty truck at the switch and left it open, pulling this empty truck, and she didn't notice the switch, and the truck run in and she kicked the truck; that was his fault, and she kicked that time because the car ran into the open switch and started off sideways, and brought the tug against her and turned her, and she kicked. Respondent also testifies that he had had considerable experience in working and handling horses before he came to the mill, and had also worked for his father at times, and had experience in the spring and summer hauling for neighbors and had experience in plowing, any kind of work there was to do.

This is practically all the material evidence bearing on the question of negligence of the plaintiff.

This court in a number of cases has laid down the general rule of law which prevails in this state as to the duty of the master to the servants or employees: It is the duty of the master to furnish the servant with a reasonably safe place at which to work, and with reasonably safe machinery, tools and implements with which to work, and if the employee discharges such duties and the employment is accepted by the employee, then the employee assumes all the risk and hazard incident to or attendant upon the particular employment or the performance of the particular work. So in this state the rule of law is well settled upon the relations of master and servant. (*Harvey v. Alturas Gold Min. Co.,* 3 Ida. 510, 31 Pac. 819; *Crawford v. Bonners Ferry Lumber Co.,* 12 Ida. 678, 87 Pac. 998, 10 Ann. Cas. 1; *Craesafulli v. Winston Bros. Co.,* 18 Ida. 158, 108 Pac. 740; *Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080; *Maw v. Coast Lumber Co.,* 19 Ida. 396, 114 Pac. 9; *Knauf v. Dover Lumber Co.,* 20 Ida. 773, 120 Pac. 167.)

The case of *Maw v. Coast Lumber Co., supra,* announces also the rule with reference to defects in the machinery or appliances which the master provides for the employee, and the court says:

"There is some evidence in the record which might tend to show that the plaintiff had knowledge of the defects of the machine, or that he was placed in a position so that if he had used ordinary care he could have had this knowledge. But we think the rule of law well established that a master cannot plead such knowledge upon the part of a servant if he himself had a knowledge of the defect, and failed and neglected to repair the same, and that by reason thereof the plaintiff sustained the injury."

In that same case, in discussing the opinions to be drawn from the evidence, this court said: "Where different opinions might well be entertained upon the question of whether the plaintiff must have seen, or whether his attention was called to, the defects (and different opinions might well be entertained upon these questions), the question was one for the jury,

and was properly submitted to the jury, who found adversely to the defendant.''

From the evidence above recited it is clear beyond any question that when Van Hoter told the respondent to take the horse in question, and the respondent told him that he did not care to take him because he was not broken, and he thereafter took the horse out and put him to work, and continued to use the horse with knowledge that it was not broken, and he undertook to break him, he certainly knew the horse was not broken to such work, and assumed the risk incident to such effort. The appellant knew no more about the horse, apparently, than the respondent, and the appellant informed the respondent that the horse was not broken to the particular work, and could have given no greater notice or any more information to the respondent than the respondent himself had about the horse. This information was received by the respondent before he took the horse out upon the work, and by the use of the horse up. to the time the horse kicked the respondent, the respondent had more knowledge about the horse, his temper, habits and disposition than the appellant, and assumed the risk incident to breaking the horse to do such work.

The evidence also shows that for two hours prior to the accident the horse was doing the work without causing the respondent any difficulty whatever, and that suddenly the horse kicked the respondent. This kicking of the horse, which caused the injury, is in no way connected with the fact that the horse was unbroken, or that the horse had not been worked alone, and it cannot be assumed to have occurred by reason of the fact that the horse had not been broken to work alone. There is no evidence that the horse had ever kicked anybody at any time or under any circumstances prior to the time the respondent was injured; but there is evidence which shows that the horse was gentle and never did kick anyone. There is no evidence that the animal was wild or vicious.

It also appears that the horse was blind in one eye, but there is no evidence which shows that the kicking was caused from the fact that the horse could not see from that side. The jury or this court cannot presume that a horse blind in

one eye will be more likely to kick than a horse with two good eyes. This may be subject to proof by experience, observation or by an expert, but where no evidence is offered the fact is not proven. There is no conflict in the evidence as to the respondent's knowledge of the character and habits of the horse, and the jury could find only as shown by the evidence.

We do not feel that this court, as a matter of law, should hold that the natural and probable result of working a horse single, which is only broken to work double, will cause the horse to kick, or in this case did cause the horse to kick and injure the respondent. The master was not an insurer against such acts. (*Arkansas Smokeless Coal Co. v. Pippins,* 92 Ark. 138, 122 S. W. 1013, 19 Ann. Cas. 861.)

The annotations to the above case are very exhaustive, and probably contain all the cases, with the possible exception of a very few, where the facts are similar to the one now under consideration. In the syllabus in that case it is said:

"It is not to be reasonably anticipated that the driver of a car in a coal mine will be kicked from his seat on the car by the animal drawing it, or that he will otherwise be caused to fall; and therefore, on the happening of such an accident, in consequence of which the driver is crushed between the side of the car and the wall of the passageway through which the car is running, the mine owner is not chargeable with negligence in failing to provide the driver with a safe place to work, in that the passage is too narrow to admit the body of a man between the car and the wall."

The argument of counsel for respondent rests solely upon the proposition that the injuries to respondent would not have occurred had the horse been broken to the particular work which the respondent was required to put the horse to, and that the mere kicking was not the cause of the injury. From the evidence it is obvious that the immediate cause of the respondent's injury was the kick received from the horse, and but for such kick the respondent would not have been harmed. If that be true, it certainly could not be contended that the mere fact of kicking would create a liability, because there is no evidence at all to establish that the company knew any-

thing about the habit or probability of the horse kicking, or had any knowledge that the horse would kick at any time for any cause or under any particular circumstances. The respondent was a man who had experience with horses before his employment, and knew, according to his own testimony, how to handle them, and it is apparent that in hooking the chain to the single-tree it was done by the respondent in such a manner that either the chain, the single-tree, the traces, or some part of the horse's harness may have come in contact with the horse, which frightened the animal, and because of that fact, the horse kicked; if so, the cause of the kicking was produced by the acts of the respondent.

The act of kicking seems to have been acquired by the horse subsequent to the time the respondent commenced working the horse, and the company could not have given any information that the horse would kick. In this connection we call attention to the evidence that was introduced to the effect that the respondent, when he was training the horse to work, before the kicking, had been punching the horse and pulling him around and plunking him with a stick in order to make him pull, and at the time of the kicking the touch of some part of the harness might have revived the memory of that occasion, and the respondent alone have been responsible for the actual cause of the injury.

In discussing evidence proposed, and the cause of injury in a similar case, the supreme court of Pennsylvania, in *Weigand v. Atlantic Refin. Co.*, 189 Pa. 248, 42 Atl. 132, says:

"A mule may kick under circumstances which do not indicate a vicious disposition generally, as in case of sudden fright, or under provocation when teased, or in consequence of careless management. That it kicked some months or years before, or when untrained, would not be reason for the inference of continued viciousness. The fact that one of the pair had kicked (which one not being shown) would not justify the conclusion that both were vicious, or that the injury had been inflicted by the one which had kicked a driver before.

"The offers to prove that the company's manager had been told that the team was unsafe fixed no time, with reference to

the plaintiff's injury, when the communication was made, except that it was within two years thereof. It was not proposed to show that any facts were stated to him, but the mere opinion of a witness, not that the mules were vicious, but that they were unsafe. They might have been unsafe in many ways, as the result of timidity or want of training, without showing any indication of either general viciousness, or a disposition to injure anyone when in their stalls.''

The knowledge respondent had in working with horses, previous to his employment, and his experience with the horse prior to the time he was kicked, were sufficient to put him on his guard, in a general way, that horses naturally possess the *nature* of speaking and defending themselves, when attacked or struck with an object, or assaulted or touched or teased by a person or object, and their natural method of speaking or defending themselves is known generally (in horse phraseology) to be kicking. This seems to be about the only system of defense a horse resorts to, and it is universally known by people who use horses that it is resorted to sometimes by horses that have been used for years, and always been gentle, until the time the remedy is resorted to, and that the most gentle and docile animal will sometimes adopt this method. To adopt a rule in this court which would permit a recovery in this action would subject every owner of a horse to liability, under all occasions, if a horse should kick anyone employed in the use of such horse, notwithstanding the fact that the animal is docile, kind and gentle, and however excellent the character of the horse was. The extreme docility and gentleness could make no difference in the right to recover, in an action of this kind, if such a rule should be permitted.

The fourth assignment of error is sustained, on the ground that the evidence is insufficient to sustain the verdict or judgment.

The other alleged errors are not material, and will not be considered.

Entertaining the views as announced in the foregoing opinion, it would seem that a reversal of the judgment and the

allowance of a new trial would not avail the respondent in giving him any relief, under the allegations of the complaint and the evidence, and for that reason we direct that the judgment be reversed and a judgment entered for appellant; that said cause be dismissed.    Costs awarded to the appellant.

Sullivan, J., concurs.