[No. 10788. Department One. May 6, 1913.]

ELIGIO FEROGLIO, *Respondent*, v. AUGUST PAULSEN *et al.*, *Appellants.*[1]

MASTER AND SERVANT—INJURY TO SERVANT—"SAFE PLACE"—ASSUMPTION OF RISKS—FELLOW SERVANTS. The duty to furnish a "safe place" applies to an employee at work in a cut on a steep mountain side, struck by a rolling rock, where the master put men to work above him and attempted to protect his working place from falling rocks by placing brush as a barrier; since the employee had a right to assume that it was an effective barrier, and negligence therein was not an assumed risk of the negligence of a fellow servant.

SAME—GENERAL AND SPECIAL VERDICTS—CONSISTENCY. Where an injury was due to an ineffective barrier, placed on a mountain side to protect a working place from falling rocks, a special verdict that the injury was due to the negligence of the foreman in charge of the work, is not inconsistent with a general verdict for the plaintiff.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered August 15, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action

[1] Reported in 131 Pac. 1163.

for personal injuries sustained by a laborer struck by a falling rock. Affirmed.

*Myron A. Folsom, John H. Wourms,* and *John H. Pelletier,* for appellants.

*Roberston & Miller* and *Thomas J. Corkery,* for respondent.

MOUNT, J.—Action for personal injuries. Plaintiff recovered a judgment in the court below for $2,200, on the verdict of a jury. The defendants have appealed from that judgment.

The facts are in substance as follows: The defendants, with others, on November 20, 1910, were the owners of the Hercules mine, located at Burke, Idaho. They were engaged in constructing a building for a mill near there, at Wallace, Idaho. This mill was being constructed upon the side of a mountain which was very steep, rising at an angle of about forty-five degrees. At that time they were engaged in making a cut for the foundation of the mill. The plaintiff was employed as a workman in this cut. His duties were to hold a drill while another workman used a large hammer with both hands to strike the drill. In order to hold the drill, it was necessary for the plaintiff to watch the drill closely.

On the date named, the defendants had made two angular cuts in the side of the mountain. The perpendicular wall of the lower cut was about sixteen feet in height. Immediately above this and to the east was another triangular cut, the perpendicular wall of which was about four feet in height. The plaintiff was working in this upper triangular cut holding a drill while another man was hammering on the drill. He was sitting or resting upon his knees with both hands upon the drill. Each time the drill was struck it was necessary to raise it slightly and turn it. The drill was operated in solid rock. The mountain side above where plaintiff was working had been cleared of brush, and when he was stand-

ing he could look above the perpendicular wall under which he was working and have a good view of the side of the mountain. About one hundred feet up the mountain side from where the plaintiff was working, a crew of men in the employ of the defendants were making a cut for a water flume. These men, under the direction of Mr. Franz, the foreman in charge, had piled brush below the cut for the water flume in order that the rocks therefrom might not roll down the mountain side. While the plaintiff was holding the drill, as above stated, a rock started to roll down the side of the mountain. One of the men above saw the rock and called a warning to the men below. The foreman in charge at that time was within about eight feet of the plaintiff. He saw the rock coming and called a warning to the plaintiff and the man who used the hammer. The foreman and the man who was doing the hammering ran. The plaintiff, at the time the warning was given, was either sitting or resting upon his knees, holding the drill. He started to run but got in the way of the rock, which struck him and injured him. The plaintiff knew that the men were working above him on the hill. He also knew that brush had been piled along the cut for the flume. But while he was sitting at his work, he could not see above the perpendicular cut under which he was working. He knew that the side of the hill was very steep; that when a rock or anything above was loosened it would roll down. There was no evidence to show just where the rock started or what caused it to start down the mountain side. Plaintiff knew the vicinity and all the surroundings.

Upon the trial of the case, several interrogatories were propounded to the jury by the court at the request of the defendants, two of which questions were answered as follows:

"Was the injury to the plaintiff caused by the negligence of any person or persons? Answer: Yes. If you answer the first interrogatory in the affirmative, state the name of the person or persons whose negligence caused the injury. Answer: Mr. Franz."

Mr. Franz was the foreman in charge of all the men at work on the mountain side.

At the close of the plaintiff's evidence, the defendants moved the court for a nonsuit, and at the close of all the evidence, moved the court for a directed verdict. These motions were denied.

The appellants make no question upon the introduction of evidence or the instructions of the court. The assignments of error are to the effect that the court erred in overruling the motion for a nonsuit and the motion for a directed verdict, and that the special verdicts are inconsistent with the general verdict.

The theory of the plaintiff's case is that the defendants placed plaintiff at work in a dangerous place and stationed men above him on the hillside, which made the place more dangerous than it otherwise would have been, and negligently failed to make the place safe or to keep it safe. The appellants contend upon this appeal that the plaintiff, knowing the conditions which surrounded him, assumed the risk of rocks rolling down upon him, and that the doctrine of "safe place" does not apply to this case. They also contend that the negligence, if there was any which caused the rock to roll down the mountain side, was the negligence of a fellow servant of the plaintiff, and that the plaintiff therefore cannot recover.

There is no evidence in the case which shows how the rock was started in its descent. One of the men working above saw the rock after it had started. He shouted a warning to the men below. Mr. Franz, the foreman, was standing near the plaintiff, and also shouted a warning to the plaintiff. The plaintiff, in obedience to the warning, sought shelter, not knowing the course of the rock. If he had remained at his post he would not have been injured.

We think the rule of "safe place" applies to this case. The plaintiff while at his work, was unable to see the workmen above him, or to see rocks which might start from the hillside. The foreman in charge of the work had attempted to

make the place safe by placing brush below the cut for the flume, where workmen were engaged in throwing rocks and material upon the brush.  This brush was for the purpose of preventing such material from rolling down the hill.  In other words, the foreman, who represented the master, realized the necessity of protecting the men below, and therefore had directed the men above to place this barrier for that purpose, and for the purpose of holding the material upon the ground.  If we may assume for the purpose of this case that the plaintiff working below was a fellow servant with the workmen above, it was the duty of the defendants, through their foreman in charge of the work, to furnish the plaintiff with a reasonably safe place so that he might be protected from acts which he could not see and which he could not prevent.  Where the plaintiff knew that the defendant had constructed a barrier, he certainly had the right to assume that the defendant had furnished an effective barrier.  It is no doubt true that this court has held in many cases that a servant assumes the ordinary risks incident to the work in which he is engaged.  And it is also true, as we have many times held, that the servant has no right to assume that the master has furnished a safe place where the dangers are known or are as apparent to the servant as to the master.. But we think neither of these rules apply to this case.  Plaintiff knew that a barrier had been erected by the defendants or their foreman.  Although he knew there was danger where no barrier was constructed, he had a right to assume that the master had erected a sufficient barrier, and to rely upon the master performing the duty which had been undertaken and which the master owed to him.

In *McLeod v. Chicago, Milwaukee & P. S. R. Co.*, 65 Wash. 62, 117 Pac. 749, we said: ·

"He [the servant] assumes the risk of such dangers only as are necessarily incident to the work.  The difference is not in the rule but in the greater number of dangers incident to the work.  The real question in any case is as to what con-

stitutes reasonably careful conduct on the part of the master looking to reasonable safety for the men. . . . If the place was made unnecessarily dangerous through the negligent act of the master or its vice principal, the master is liable for injury resulting therefrom."

In *Campbell v. Jones*, 60 Wash. 265, 110 Pac. 1083, where the servant was placed to work on a hillside and was injured by a stump which was loosened from its place by the foreman in charge, we said:

"But we think the court erred in sustaining the challenge to the evidence made on behalf of the defendants Jones & Onserud. They were the appellant's employers, and owed to him the duty of furnishing him with a reasonably safe place in which to work, and the duty of keeping the place reasonably safe as long as they required him to work therein. This duty was nondelegable, and when they intrusted it to another, they became responsible for the negligent performance of the duty by that other. . . . The duty of the respondents to oversee the appellant's place of work was a continuing duty, obligatory upon them at all times; that while the work itself may have been servant's work, the duty to see that its performance did not result in injury to the servants working elsewhere was the master's duty. This duty, as we say, could not be delegated, and if the injury to appellant was caused by its negligent performance, the master is liable. This principle was announced by this court in the case of *Creamer v. Moran Bros. Co.*, 41 Wash. 636, 84 Pac. 592."

In *Howland v. Standard Milling & Logging Co.*, 50 Wash. 34, 96 Pac. 686, we said:

"Nor do we think the act which rendered the place unsafe was the act of a fellow servant of the respondent. It is the fundamental duty of the master to make and keep safe the place in which he requires his servants to work, and this duty cannot be delegated so as to relieve the master from liability for a negligent performance of the duty. . . . But it is not the rule that a servant who goes into a dangerous situation assumes the risk of all danger surrounding the place. He assumes those dangers only which are inherent in and which exist from the nature of business—those dangers against which there is no absolute protection, not

those caused by some negligent act of the master and which would not exist but for such negligent act."

In this case the master had undertaken to protect the plaintiff and those working with him in the excavation for the foundation, by erecting a barrier above to prevent the earth and rock from rolling down upon the plaintiff and those associated with him. It was not the duty of the plaintiff to inspect this barrier to see that it was safe, but he had a right to rely upon the master in that respect. And when he went to work at his place at the drill, he did not assume dangers which were not incident to the work in which he was engaged. He no doubt assumed whatever risk there was in connection with his fellow workman striking the drill, and things of that character. But he might rest assured that the master had protected him against the workmen above, as the master had attempted to do. The master's neglect in this respect was not one of the risks which the plaintiff assumed.

We are satisfied for these reasons that there was no question of the assumption of risk of a fellow servant, and that the evidence was sufficient to go to the jury upon the question of "safe place." The laws of Idaho, where this action arose, are substantially the same as our own upon this question. *Maloney v. Winston Bros. Co.*, 18 Idaho 740, 111 Pac. 1080; *Craesafulli v. Winston Bros. Co.*, 18 Idaho 158, 108 Pac. 740; *Knauf v. Dover Lumber Co.*, 20 Idaho 773, 120 Pac. 157.

By the special verdicts hereinbefore quoted, the jury found that the injury to the plaintiff was caused by the negligence of Mr. Franz. As we have seen, Mr. Franz was the foreman of the men employed in the work where plaintiff was working, and also foreman of the men employed in the work above upon the mountain side. His negligence as such foreman in not constructing a sufficient barrier was, of course, the negligence of the defendants, and the special verdicts are consistent with the general verdict.

. We find no error in the record, and the judgment is therefore affirmed.

CROW, C. J., GOSE, PARKER, and CHADWICK, JJ., concur.