(November 9, 1923.)

ED WARNER, Respondent, v. PITTSBURGH–IDAHO COMPANY, LIMITED, a Corporation, Appellant.

[220 Pac. 492.]

ACTIONABLE NEGLIGENCE—ASSUMED RISK—DUTY OF MASTER—BURDEN OF PROOF—DANGEROUS APPLIANCES—AMOUNT OF DAMAGES—WHEN QUESTION OF LAW—INSTRUCTIONS.

1. Where a mine has several hundred feet of underground workings, consisting of drifts, tunnels, stopes and winzes, the different levels being connected by manways leading to an exit through the main tunnel, and gasoline internal combustion engines are used for operating the pumps, a part of this fuel being required to be drawn into cans and carried to a distant part of the mine, this being done by a workman who was permitted to use an open carbide light, the company operating the mine is guilty of actionable negligence where a fire results from such conditions, and an employee who is entrapped in the mine for twelve hours may recover for injuries caused thereby.

2. In this state, assumed risk and contributory negligence are matters of defense that must be pleaded and proved to make the same available.

3. It is the duty of the master to furnish the servant with a reasonably safe place in which to work, and with reasonably safe tools, machinery and appliances with which to do the work required of him. This is a positive duty, which cannot be delegated by the master so as to relieve him of such duty.

4. One cannot excuse negligence in furnishing dangerous appliances with which to work by reason of not being financially able to purchase and instal safe appliances.

5. In an action against a mining company for injuries caused by being entrapped for a period of twelve hours in a mine filled with smoke and dangerous gases, caused by a gasoline explosion

Publisher's Note.

3. Delegability of master's duty to instruct or warn servants as to machinery, tools or appliances, see notes in 11 Ann. Cas. 105; 26 L. R. A., N. S., 629.

5. Excessiveness of verdicts in actions for personal injuries other than death, see notes in 16 Ann. Cas. 8; Ann. Cas. 1913A, 1361; Ann. Cas. 1915D, 488; Ann. Cas. 1916C, 916; L. R. A. 1915F, 30.

and fire which followed, the question of just compensation for injuries alleged to have been received by an employee is a matter within the discretion of the jury, under proper instructions, and a court cannot say as a matter of law that a verdict of $1,000 is so excessive as to warrant the inference that it was influenced by passion or prejudice.

6. Instructions must be read and considered as a whole, in connection with the facts and circumstances of the case in which they are given; and when so considered in this case they afford no justification for its reversal.

APPEAL from the District Court of the Sixth Judicial District, for Lemhi County. Hon. Ralph W. Adair, Judge.

Action for damages for personal injury. Judgment for plaintiff and defendant appeals. *Affirmed.*

Whitcomb, Cowen & Clark, for Appellant.

The plaintiff assumes ordinary risk, which includes risk arising from the character of instrumentalities used. (3 Labatt's Master and Servant, 2d ed., secs. 1171–1173.)

The master is not legally obligated to use the safest kind of machinery and appliances. (3 Labatt's Master and Servant, 2d ed., sec. 931; *Goure v. Storey,* 17 Ida. 352, 105 Pac. 794.)

A master is not responsible for negligent use of safe appliances by fellow-servant. No proof was made that the appliances furnished by the defendant company were unsafe. (4 Labatt's Master and Servant, 2d ed., secs. 1520, 1521; *Zienke v. Northern Pac. Ry Co.,* 8 Ida. 54, 66 Pac. 828.)

The alleged injury was the result of the negligence of a fellow-workman. Walters, the engineer, and the plaintiff, as mechanic's helper, were working on the same machinery at the time of the accident. (4 Labatt's Master and Servant, 2d ed., secs. 1393, 1395, note 8; 26 Cyc. 1276G.)

Employee assumes the risk of all known dangers, actual or constructive, including the negligence of the master. (26 Cyc. 1196, par. 5; *Selhaver v. Dover Lumber Co.,* 31 Ida. 218, 169 Pac. 1169; *Smith v. Hecla Mining Co.,* 38

Wash. 454, 80 Pac. 779; *McGlynn v. Brodie,* 31 Cal. 376; 26 Cyc. 1196; *Brazil Block Coal Co. v. Gibson,* 160 Ind. 319, 98 Am. St. 281, 66 N. E. 882; *Baltimore & P. Ry. Co. v. State,* 75 Md. 152, 32 Am. St. 372, note, 23 Atl. 310; *Drake v. Union Pac. Ry. Co.,* 2 Ida. 487, 21 Pac. 560, 4 L. R. A., N. S., 848, note.)

The jury should be instructed to exonerate the master in all cases where the employee knew of the dangers incident to his employment, actual or constructive, including the negligence of the master. (*Sowden v. Idaho Quartz Mining Co.,* 55 Cal. 443; *Union Pacific Ry. Co. v. Monden,* 50 Kan. 539, 31 Pac. 1002; *So. Indiana Ry. Co. v. Moore,* 34 Ind. App. 154, 72 N. E. 479; *Cleveland etc. Ry. Co. v. Scott,* 29 Ind. App. 519, 64 N. E. 896; *Hanson etc. Ry. Co. v. DeWalt* (Tex.), 70 S. W. 531; 26 Cyc. 1503, note 38.)

The better opinion appears to be that the burden is upon the plaintiff to negative assumption of risk and make proof thereof. (26 Cyc. 1397, note 89; *Minty v. Union Pac. Ry. Co.,* 2 Ida. 471, 21 Pac. 660, 4 L. R. A. 409.)

It was plaintiff's duty to complain to the defendant company of any danger or defect in the use of gasoline engines underground, and in the manner of handling the gasoline. (*Harvey v. Alturas Gold Min. Co.,* 3 Ida. 510, 31 Pac. 819; 3 Labatt's Master and Servant, 2d ed., sec. 1217.)

L. E. Glennon, for Respondent.

"It is the duty of the master to furnish the servant with a reasonably safe place at which to work, and with reasonably safe machinery, tools and implements with which to work." (*Smith v. Potlatch Lumber Co.,* 22 Ida. 782, 128 Pac. 546; *Harvey v. Alturas Gold Mining Co.,* 3 Ida. 510, 31 Pac. 819; *Crawford v. Bonners Ferry Lumber Co.,* 12 Ida. 678, 10 Ann. Cas. 1, 87 Pac. 998; *Craesafulli v. Winston Bros. Co.,* 18 Ida. 158, 108 Pac. 740; *Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Tucker v. Palmberg,* 28 Ida. 693, 155 Pac. 891; *Weisner v. Bonners Ferry Lumber Co.,* 29 Ida. 526, 160 Pac. 647, L. R. A. 1917C, 328; *Cnkovch v. Success Min. Co.,*

30 Ida. 623, 166 Pac. 567; *Henness v. Pend d'Oreille Min. & Reduc. Co.*, 32 Ida. 121, 178 Pac. 836; *Ramon v. Interstate Utilities Co.*, 31 Ida. 117, 170 Pac. 88.)

An employee only assumes the risk naturally incident to the particular line of employment in which he is engaged. And he is held to have assumed such risks only when the master has fully performed his duty and provided a reasonably safe place in which to work. (*Maw v. Coast Lumber Co.*, 19 Ida. 396, 114 Pac. 9; *Freeman v. Fuller* (Tex. Civ.), 127 S. W. 1194; *Missouri K. & T. Ry. Co. v. Quinlan*, 77 Kan. 126, 93 Pac. 632, 11 L. R. A., N. S., 1153; *Kangas v. National Copper Min. Co.*, 32 Ida. 602, 187 Pac. 792; *Erickson v. Rutledge T. Co.*, 34 Ida. 754, 203 Pac. 1078; *Kinzell v. Chicago etc. Ry. Co.*, 33 Ida. 1, 190 Pac. 255; 3 Labatt's Master and Servant, 2d ed., sec. 894.)

In cases of this kind the question of just compensation is always a matter within the discretion of the jury. When it appears from the evidence that the jury has not abused that discretion, nor been influenced by bias or prejudice, it is not within the province of the court to disturb the verdict. (*Horn v. Boise City Canal Co.*, 7 Ida. 640, 65 Pac. 145; 8 Am. & Eng. Ency. of Law, 2d ed., 630; *Tarr v. Oregon Short Line R. R. Co.*, 14 Ida. 192, 125 Am. St. 151, 93 Pac. 257.)

The question of contributory negligence is a matter of defense and the burden is on the defendant to establish the same. (*Crawford v. Bonners Ferry Lumber Co.*, 12 Ida. 678, 10 Ann. Cas. 1, 87 Pac. 998; *Knauf v. Dover Lumber Co.*, 20 Ida. 773, 120 Pac. 157.)

WILLIAM A. LEE, J.—This is an action by respondent against appellant to recover damages for personal injuries alleged to have been caused by reason of his being confined underground in the mining property of appellant while the mine was filled with smoke and poisonous gases, resulting from a fire in the mine, on January 3, 1917.

The complaint stated four separate causes of action, but at the termination of the taking of evidence, respondent

dismissed the second and fourth causes, and the case was submitted to the jury upon the first and third counts of the complaint. The first is based upon the alleged failure of appellant to provide respondent a reasonably safe place in which to work, and the third is based upon the alleged failure of appellant to furnish its employees with reasonably safe appliances and equipment with which to perform their work.

The evidence discloses that in the operation of the mine, two gasoline engines were used underground to remove water from the workings. Both were located on the 600-foot level. The main gasoline supply was stored in a tank on the 400-foot level, from which storage tank the gasoline was conducted to the first engine, at the foot of the main shaft on the 600-foot level, through an iron pipe. For the purpose of supplying gasoline to the second engine, located several hundred feet from the pipe-line, one Walters, an employee of appellant, who was in charge of the engines, attempted to draw gasoline from the pipe-line at the first engine into a five-gallon can. For light during this operation he used an open carbide lamp, and during the operation the gasoline he was attempting to draw became ignited. In addition to spreading to adjoining combustible material, it burned the gasoline from the ten-gallon supply tank of the first engine, and whatever had been drawn for the second.

By reason of the fact that the air currents in the mine carried smoke and fumes up the main shaft and down the various manways to the lower levels, the employees in the mine, including respondent, who was working on the 600-foot level, were unable to reach the surface. Eight, having taken refuge in the south drift, constructed a bulkhead to shut out the gas and smoke, while six others, including respondent, retreated to the end of the north drift, but did not attempt to construct bulkheads. One miner attempted to ascend through the manways against the descending current of gas, and later his lifeless body was

found on the 500-foot level, where he had been overcome by the fumes.

Immediately upon the occurrence of the fire, which was about noon, rescue measures were commenced, by the construction of bulkheads and fire-doors in the upper levels of the mine, for the purpose of diverting the air currents so that the gas and smoke would be conveyed out and fresh air forced into the lower levels of the mine. About midnight of this same day, rescue crews, after having been driven back a number of times, succeeded in reaching the imprisoned miners, and they were brought to the surface, after having been confined in the mine on the 600-foot level for some twelve hours.

It is alleged that appellant company had failed to provide any means of escape from these underground workings in case of the occurrence of an accident of this kind, and that the fire itself was the result of appellant's negligence in not providing its employees with proper appliances, in that the engineer whose duty it was to operate these gasoline engines was permitted to draw off gasoline from the end of the pipe-line on the 600-foot level and carry the same in vessels to the second engine, several hundred feet distant from the first engine, and while doing so to use an open carbide light, and that he was so doing at the time of the explosion and fire.

The jury returned a verdict in favor of respondent for $1,000. Judgment being entered thereon, appellant moved for a new trial, which was denied, and this appeal is from the order denying the motion for new trial and from the judgment.

Numerous errors are assigned, based upon instructions given by the court which are claimed to be erroneous and to conflict with each other; error in denying appellant's motion for a new trial; in refusing to direct a verdict; in permitting the witness Blake to testify that the body of the deceased miner who refused to turn back with the other miners was afterward found and taken out of the mine; and that the judgment is excessive.

Without separately discussing all of the assignments, it appears that the principal errors upon which appellant relies relate more particularly to whether appellant furnished a safe place for its employees in which to work and safe instrumentalities with which to do their work, whether such failure was the proximate cause of the injury complained of, and whether these questions were properly submitted to the jury.

It is the duty of the master to furnish the servant with a reasonably safe place in which to work, and with reasonably safe tools, machinery and appliances with which to do the work required of him. (*Smith v. Potlatch Lumber Co.,* 22 Ida. 782, 128 Pac. 546; *Harvey v. Alturas Gold Min. Co.,* 3 Ida. 510, 31 Pac. 819; *Tucker v. Palmberg,* 28 Ida. 693, 155 Pac. 981.)

Under the facts of this case, and the circumstances under which the alleged injury occurred, there is sufficient evidence from which the jury might fairly conclude that the master was negligent in his duty. (*Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Craesafulli v. Winston Bros. Co.,* 18 Ida. 158, 108 Pac. 740.)

There is a duty devolving upon the master to furnish his servant with a reasonably safe place in which to work. This is a positive duty and cannot be delegated, and if the master attempts to delegate that duty to any other person, of whatsoever rank, the acts of the person in this respect are the acts of the master, and the master is consequently responsible. In providing a reasonably safe place in which to work, regard must be had to the kind of work required of the servant, and the conditions under which it must necessarily be performed. (*Mather v. Rillston,* 156 U. S. 391, 15 Sup. Ct. 464, 39 L. ed. 364; *Baltimore & O. Ry. Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. ed. 772; *Chris v. Wichita Gas Co.,* 72 Kan. 135, 83 Pac. 200; *Crawford v. Bonners Ferry Lumber Co.,* 12 Ida. 678, 10 Ann. Cas. 1, 87 Pac. 998.)

Upon direct examination by appellant's counsel, the witness Tweedy testified in effect that he was the foreman at the time of this accident, and had been connected with the company since 1914; that respondent was at the time of the injury working with the master mechanic's pipe-fitting crew, helping to set up a new electric pump which was being installed to take the place of the gasoline pumps then in use; that the gasoline engine on the 600-foot level had been there over three years that he knew of, and was used for pumping water to the 400-foot level in order to keep the mine free from water; that the second engine and pump was also on the 600-foot level, and had been there about two years; that gasoline was carried to it from the feed tank of the first engine; that on the 400-foot level there was a tank of gasoline holding about fifty gallons, which was refilled about every ten days, which was connected with a small pipe running down the winze to where the first pump engine stood; that the engineer running the pump would open the valve above the feed tank of the first engine, and would rap on the tank, and the engineer or man above would let gasoline flow into this tank, which held about ten gallons; when it was pretty well filled up, the engineer would again rap on the tank, and the party in charge of the large tank above would close the valve; that in supplying the second engine, which was located about 325 feet from the first, the engineer would take a five-gallon can and open the faucet in the supply pipe from the main storage tank, fill this can and carry it from there to the second engine; and that the party in charge of carrying the gasoline was instructed to use a flash-light, but at the time of the accident was using an open carbide light.

Appellant in its answer apparently seeks to excuse the dangerous character of these appliances by alleging that "at the time of the fire the financial status of the company did not warrant the purchase and instalation of other and more expensive machinery to operate said pumps." It thus appears that this company was operating a mine that had many hundreds of feet of underground tunnels,

stopes and winzes, which were connected by manways leading to the several levels. These underground workings appear to have been inadequately supplied with exits. The use of such a highly inflammable article as gasoline for operating internal combustion engines in these underground workings, with the additional hazard that would arise by reason of having to draw off in cans and carry the gasoline to the second engine, some several hundred feet away, and the fact that this method of operating had been in use for several years, together with the further fact that the lighting of such underground workings was permitted to be done with open carbide lights, brings the transaction within the doctrine of *res ipsa loquitur,* which is that the circumstances attendant upon an accident are themselves of such character as to justify a jury in inferring negligence as the cause of the accident, and that the conditions are such that in their very nature they warrant the inference of negligence on the part of the person in charge of the injurious agency. (*Wilson v. St. Joe Boom Co.,* 34 Ida. 253, 200 Pac. 884; 7 Words & Phrases, 6136; 3 Bouvier's Law Dictionary, 2908; note on applicability of rule of *res ipsa loquitur* as between master and servant, L. R. A. 1917E, 4.)

Appellant contends that respondent, being thoroughly familiar with the methods of operating this mine, must be held to have assumed the risk incident to his employment, and that according to the better opinion, the burden is upon plaintiff to negative assumption of risk. According to the doctrine of assumed risk, as it is usually applied, an employee by his act of entering the service of the employer assumes such risks as are ordinarily and usually incident thereto, and if he is injured solely by reason of these perils, he cannot recover.

In *Crawford v. Bonners Ferry Lumber Co., supra,* which case is also found in 10 Ann. Cas. 1, with an extensive note on this question, this court held that: "The burden of proof is upon the defendant to show that plaintiff was guilty of contributory negligence."

The rule there announced should apply to assumed risk as well as to contributory negligence; either should be a matter of defense which must be affirmatively pleaded and proven. Certainly neither of these defenses was present in the instant case.

Appellant complains that there is no evidence that respondent suffered any permanent injuries except that given by himself. In a case of this kind, the question of just compensation is a matter within the discretion of the jury, and unless it appears from all the evidence, when considered together, that the jury has abused this discretion and has been influenced by passion or prejudice, it is not the province of this court to disturb the verdict. (*Horn v. Boise City Canal Co.*, 7 Ida. 640, 65 Pac. 145.)

Appellant predicates a number of errors upon instructions given. It would unduly extend this opinion to review all of these assignments, and in view of the conclusion we reach after having considered them, it is not necessary. It is quite generally held that the instructions must be read and considered as a whole, with regard to the facts and circumstances of the case in which they are given. (*Raide v. Dollar*, 34 Ida. 682, 203 Pac. 469.) When these instructions are so considered, they do not afford a justification for the reversal of this case.

Nor was it error to permit the witness Blake to testify that the body of the deceased miner who refused to turn back with the other miners was afterward taken from the mine, for this testimony had probative value in tending to show the character of the smoke and gases caused by this fire in the mine where these miners were entrapped.

The judgment is affirmed, with costs to respondent. It is so ordered.

Budge, C. J., and McCarthy, Dunn and Wm. E. Lee, JJ., concur.